UNITED STATES of America

v.

Bobby WATTS, Defendant.

Crim. No. 2287–71.

United States District Court,
District of Columbia.

Dec. 15, 1981.

Bobby Watts, pro se.

Charles F. C. Ruff, U. S. Atty., by Oscar Altshuler and Catherine R. Mack, Asst. U. S. Attys., Washington, D. C., for the U. S.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

The Court has before it the petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and the government's opposition thereto. Based on the following, the petitioner's motion will be denied.

## BACKGROUND

On September 15, 1971, the petitioner was arrested and charged with the ax murder of his aunt, Beatrice Jackson. The petitioner was presented on September 16, 1971, before Magistrate Arthur L. Burnett,[1] and entered a plea of not guilty through his attorney, Theodore Christensen, who was with the Public Defender Service at that time and represented petitioner in all proceedings before the trial court. On September 30, 1971, the petitioner was committed to Saint Elizabeth's Hospital pursuant to Title 24, Section 301 of the D.C.Code, as amended August 9, 1955, by order of Judge John J. Sirica. The commitment was for a period not to exceed sixty days for examination by the psychiatric staff to determine whether the petitioner was mentally competent to understand the proceedings against him and to properly assist in the prepara-

---

1. Magistrate Burnett signed the temporary commitment order of Bobby Watts on September 16, 1971. The petitioner was held without bond because it appeared to Magistrate Burnett that during the initial presentment, the petitioner had difficulty understanding the advice of the Magistrate and could not coherently answer questions. The final commitment order was signed on December 23, 1981, by Magistrate Burnett, with the petitioner still held without bond.

tion of his defense. The petitioner was indicted on December 14, 1971, in a one-count indictment charging him with a violation of 22 D.C.Code 2401, first degree murder, in the death of Beatrice Jackson. During the time that the petitioner was committed to Saint Elizabeth's, competency hearings were held before this Court on February 23, 1972,[2] April 24, 1973,[3] February 19, 1974,[4] May 22, 1974,[5] and August 12, 1974.[6] After each of these hearings, the Court determined that the petitioner was not competent for trial. The psychiatrists and psychologists stated that the petitioner was suffering from a mental illness, namely schizophrenia, but that his illness was in remission due to the treatment he had been receiving. A final competency hearing was held on January 19, 1975, after which the Court determined that the petitioner was competent for trial.[7]

A jury was empanelled on March 25, 1975, for the commencement of the petitioner's trial. After an outburst on the witness stand by Onnie Mae Ward, petitioner's cousin who witnessed the murder, the trial continued without the jury[8] which resulted in petitioner's conviction for first degree murder.[9] Moreover, the Court rejected petitioner's insanity defense which consisted of testimony from four psychiatrists and one psychologist.[10]

The petitioner was sentenced to life imprisonment on May 21, 1975, based upon his conviction for first degree murder. The petitioner filed a notice of appeal on the same date.[11]

Attorney Nathan Lewin was appointed to represent the petitioner on his appeal on May 29, 1975. The case was remanded to this Court on March 5, 1976, to make its findings of whether the government had proven beyond a reasonable doubt that the petitioner committed the act with the requisite specific intent. In accordance with the mandate of the Court of Appeals, this Court made the following findings in accordance with the rule of *United States v. Brawner*, 153 U.S.App.D.C. 1, 30–34, 471 F.2d 969, 998–1002 (1972) (*en banc*) in its June 3, 1976, order:

1. The defendant, Bobby Watts, came before this Court for trial on March 25, 1975, on an indictment charging him with one count of first-degree murder. The essential elements of the offense of murder in the first degree are:

a. That the defendant inflicted an injury or injuries upon the deceased from which the deceased died;

b. That the defendant at the time he so injured the deceased, acted with malice;

c. That the defendant, in so injuring the deceased acted after premeditation; and

d. That the defendant, in so injuring the deceased, acted after deliberation.

2. After a jury was selected, the Government began its case with the testimony of Onnie Ward. During her testimony, both the Government and the defendant waived a trial by jury. The jury was dismissed and the trial continued before the Court.

3. During three days of trial, this Court listened carefully to the testimony of all the Government and defense witnesses and examined the exhibits admitted into evidence. The Court also had the exclu-

---

2. *See* Letter dated February 22, 1972, and Order dated March 2, 1972.

3. *See* Letter dated April 3, 1973, and Order dated April 24, 1973.

4. *See* Letter dated January 25, 1974, and Order dated February 25, 1974.

5. *See* Letter dated April 26, 1974, and Order dated June 6, 1974.

6. *See* Letter dated June 17, 1974.

7. *See* Letter dated November 20, 1974, and Order dated January 13, 1974.

8. *See* Petitioner's signed waiver of trial by jury dated March 25, 1975.

9. *See* Trial Tr. at 479 and Order dated June 3, 1976.

10. *See* Trial Tr. at 478–9.

11. The Court notes that the petitioner indicates in his § 2255 motion that there was no appeal.

sive opportunity to observe the demeanor of all the witnesses who testified and to determine the credibility of said witnesses.

4. The Court finds the Government has proven beyond a reasonable doubt each and every element of the crime of first-degree murder, as set forth in paragraph one, *supra*, and specifically finds that the defendant Bobby Watts struck Beatrice Jackson with an ax causing injuries from which the said Beatrice Jackson died; that at the time he struck the deceased with the ax the defendant did so with malice and with the specific intent to kill the deceased; and that the defendant struck the deceased with the ax after premeditation and deliberation.

5. Therefore, the Court enters a finding that the defendant is guilty of first-degree murder as charged in the indictment.

This order also directed the Clerk of the Court to return the record to the Court of Appeals. The Court of Appeals affirmed the conviction on July 13, 1976, without an opinion.

In a letter filed November 22, 1978, petitioner requested this Court to reduce his minimum sentence from twenty years to ten years. After writing on petitioner's letter that this request was being "treated as a motion to modify or reduce sentence," the Court denied petitioner's request of November 20, 1978.

On July 2, 1981, the petitioner filed a form § 2255 motion to vacate, set aside, or correct his sentence. The petitioner has advanced the usual ground for his § 2255 motion, namely, ineffective assistance of counsel. Specifically, the petitioner relies on four instances where he was denied effective assistance of counsel:

1. Trial counsel's failure to present at trial petitioner's history of mental illness, particularly his hospitalization at Clifton Perkins Hospital in Jessup, Maryland;

2. Trial counsel's failure to impeach or otherwise discredit the government's eyewitness, Onnie Mae Ward, who, according to the petitioner, "has a history [of] de facto

prostitution" and "is a mentally incompetent person [who is] morally unfit for reliable testimony;"

3. Trial counsel's failure to produce a "witness" who would have testified that the petitioner was in another locale at the time of Beatrice Jackson's death; and

4. Trial counsel's failure to inform the Court of certain evidentiary points at trial, namely, that petitioner's shoes were stained with grease, not blood, and that petitioner's fingerprints were not found on the murder weapon.

The petitioner also contends that his right to a fair and speedy trial was violated.

## ANALYSIS

Based upon the following and the Court's assessment of the demeanor and credibility of the witnesses, the entire record herein and the applicable law, the Court finds that the petitioner's allegations of ineffective assistance of counsel are unsupported conclusions and are therefore insufficient to mandate the granting of his § 2255 motion. The Court further finds that the petitioner was not denied any right to a fair and speedy trial. Based upon the facts of this case, the Court will not have a hearing on the petitioner's motion, as the petitioner has not alleged facts which, if true, would entitle him to relief. *See United States v. Degand*, 614 F.2d 176, 178 (8th Cir. 1980).

■ The petitioner first contends that his *trial counsel failed to present evidence at the trial of his prior history of mental illness. However, the record is replete with references to his prior mental illness. Dr. Thomas J. Polley, Ph.D., a clinical psychologist from Saint Elizabeth's, testified as follows:

Q: All right sir. You said, I believe, that subsequent to your discussion with Dr. Bauer, you made an investigation of whether or not you had seen this person before?

A: Yes.

Q: Mr. Bobby Watts?

A: Yes.

Q: And it turned out that you had?

A: Yes.

Q: Sir, do you have before you records which indicate a prior hospitalization before he was at St. Elizabeth's?

A: Then, I was asking for all of this information.

Q: I understand that, but do you today have before you in your files and records there—

A: Yes.

Q: (continuing)—some indication that he had been hospitalized before for a mental illness, before he came to St. Elizabeth's?

A: Yes. He was admitted at the Springfield State Hospital February 18, 1971, and he was discharged from the hospital on May 5, 1971.

Trial Tr. at 154–5.

Dr. Polley continued to testify as follows:

Q: Now, do you know from these papers how Dr. Vyner came to see this man and examine him; can you tell from those records? Was he a prisoner in Maryland?

A: Yes.

Q: All right. And what was he confined for?

A: This paper says Maryland Penitentiary Hospital, Clifton T. Perkins.

Q: Do you know what crime he was confined for?

A: I believe it was rape.

Trial Tr. at 163.

Based on the foregoing excerpts from the testimony of Dr. Polley and the entire record herein, it is clear that this Court was apprised of the petitioner's prior stay at the Clifton T. Perkins Hospital in particular and his entire prior mental history in general and was able to give that information the appropriate weight that this Court deemed necessary.

The petitioner next contends that his trial counsel was inadequate because he failed to impeach or discredit the eyewitness, Onnie Mae Ward, with information that Ms. Ward was mentally incompetent because of her history of prostitution. The Court finds that this allegation has no merit. The fact of the matter is that Ms. Ward was on the scene at the time of the murder and was an eyewitness. She testified at the trial as follows:

A: Well, when he [the petitioner, Bobby Watts] came in, he had, you know, both of his hands behind his back like this, and he was standing, you know just like that (indicating).

Q: Could you see whether or not he was holding anything in his hands?

A: I could not see at all until he got in. I couldn't see it, no. But he had his hands, you know, like that (indicating).

. . . .

Q: Now, did he step into the apartment?

A: Yes, he did.

Q: And did you see whether he had anything in his hands at that time?

A: Yes. When he raised it, that is when I saw it.

Q: What did you see?

A: An ax.

Q: What did he do with the ax when he walked inside the apartment?

(At this point the witness began to sob.)

Mr. Kogan: Marshal, does she have some water there?

The Marshal: Yes.

The Witness: As he came inside the apartment, as he came in—as he came in, she opened the door for him, and he came in, and he just hit her.

Q: Now, what did she do when he hit her with the ax?

A: She fell behind the door.

Q: What did you do when you saw this?

A: Well, I screamed.

Q: After you screamed, what did you do?

A: Ran and got my son and my niece and we ran to the bathroom and fastened the door.

Q: Now, before you went to the bathroom, did you see Bobby Watts hit Beatrice Jackson any more?

A: Yes, I did.

Q: And what part of her body was he hitting with the ax?

Mr. Christensen: Objection to the form of the question, your Honor. He is leading the witness.

The Court: Sustained.

By Mr. Kogan:

Q: Now, do you recall where he was hitting her with the ax, Ms. Ward?

A: Yes.

Q: Where was that?

A: Around the neck.

Q: Now, would you tell us what happened, if anything, while you were inside the bathroom?

A: Well, he was still hitting her, you know. I kept hearing the noise. He just kept hitting her over and over again. He just kept hitting her....

Trial Tr. at 38–40.

Upon a careful review of the above, Ms. Ward's entire testimony and the entire record herein, the Court finds nothing in the record to suggest that she was incompetent to testify. Moreover, the Court, based upon its years of experience and its observation of the demeanor of the witness on the stand, finds that Ms. Ward's testimony was competent. To permit the petitioner any relief on this ground would be a clear abuse of the judicial system.

Ms. Ward's testimony also contradicts the petitioner's contention that his trial counsel failed to call a witness who would have testified that the petitioner was in another locale at the time of Ms. Jackson's death. Once again the Court finds this contention has no merit. The petitioner should not be heard after more than eleven years to claim that he can produce a witness to proffer such testimony, in light of all of the other evidence.

The final ground on which the petitioner seeks to attack the adequacy of his representation is his trial counsel's failure to raise certain evidentiary objections. The petitioner first contends that his shoes were grease-stained and not blood-stained. However, the testimony of Special Agent Francis Silas, Jr. of the FBI Serology Laboratory directly refutes this allegation. Special Agent Silas testified that he found blood on one of the petitioner's shoes. (Trial Tr. at 122–126). The petitioner next contends that his trial counsel was ineffective for failing to show that his fingerprints were not found on the murder weapon. This point was brought out at the trial by Officer Robert Laughery of the Metropolitan Police Department Mobile Crime Unit who testified that he processed the murder weapon for latent fingerprints and found none. (Trial Tr. at 94–95). Accordingly, this claim is unfounded.

The final ground on which the petitioner relies in his § 2255 motion is that his right to a fair and speedy trial were violated. The Court finds this contention equally meritless. Indeed, this Court took every precaution to ensure that the petitioner was accorded a fair trial by making sure that the petitioner was competent to stand trial. Moreover, this Court took the added precaution of assuring the petitioner's competency even in the face of the reports from Saint Elizabeth's that indicated that the petitioner had sufficiently recovered so that he was in fact competent.[12] Further any speedy trial problems that the petitioner could claim [13] were effectively waived because the resultant delay between his arrest and trial was due exclusively to waiting until the petitioner was found competent to stand trial, *supra*, p. 355.

## CONCLUSION

Upon a careful review of the petitioner's § 2255 motion, the government's opposition thereto and the entire record herein, the Court finds that the petitioner's allegations have no merit and his motion must accordingly be denied.

An Order in accordance with the foregoing shall be issued of even date herewith.

---

**12.** *See* Letters dated April 23, 1973; April 26, 1974; June 17, 1974; and November 20, 1974.

**13.** The Court notes that the Speedy Trial Act was not implemented until 1975.