**UNITED STATES of America, Appellee,**

v.

**Eduardo Jose FRANCOMANO et al., Appellants.**

**Nos. 76–1228, 76–1229, 76–1232 and 76–1233.**

United States Court of Appeals, First Circuit.

Argued Feb. 4, 1977.

Decided May 3, 1977.

---

Astrid Castro Franceschi, Guaynabo, P. R., by appointment of the court and Jose Enrique Amadeo, Rio Piedras, P. R., by appointment of the court, for Eduardo Jose Francomano and Daniel Jose Scodes, appellants.

Angel M. Castillo Rodriguez, Hato Rey, P. R., by appointment of the Court, for Fernando Arias Roghuett, appellant.

Jose M. Rocafort Bustelo, Santurce, P. R., by appointment of the court, on brief for Mario A. M. Fassani Donaso, appellant.

Jose A. Quiles, Asst. U. S. Atty., San Juan, P. R., with whom Julio Morales Sanchez, U. S. Atty., San Juan, P. R., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and VAN OOSTERHOUT,* Senior Circuit Judge.

VAN OOSTERHOUT, Senior Circuit Judge.

Defendants Eduardo Jose Francomano, Mario A. M. Fassani Donoso, Daniel Jose Scodes and Fernando Arias Roghuett have each taken a timely appeal from their conviction by a jury upon an indictment charging them and Hugh MacQueen Boord, Joanne Mentala, and Walter Edwin Martian with violation of 21 U.S.C. § 963, charging that on or about July 22, 1975, in the District of Puerto Rico and elsewhere, defendants, aiding and abetting each other, knowingly and intentionally did attempt to import into the United States from a place outside thereof approximately fifty pounds of marihuana, a Schedule I controlled substance.

* Of the Eighth Circuit, sitting by designation.

Defendants Boord and Martian were jointly tried with the defendants whose appeals are now before us. Martian has failed to perfect his appeal and his appeal has been dismissed by this court. The appeal of Boord, the captain and owner of the vessel, is not now before this panel. The case of Joanne Mentala was continued by reason of the illness of her counsel. The defendants, whose appeals are now directly before us, will generally be referred to hereinafter as appellants. Appellants Fernando Arias Roghuett and Mario A. M. Fassani Donoso were each sentenced to two years imprisonment. Eduardo Jose Francomano was sentenced to nine months imprisonment, and Daniel Jose Scodes was sentenced to one year and a day imprisonment. Required two year parole terms were imposed on each defendant.

A joint brief was filed on behalf of Scodes and Francomano. A joint brief was likewise filed on behalf of Fassani Donoso and Arias Roghuett.

Each appellant filed motions for acquittal at the close of the Government's case and again at the close of all the evidence. Such motions raised the issue of the sufficiency of the evidence to support the convictions. Such motions were overruled and all appellants seek a reversal upon the basis that the evidence is not sufficient to support a conviction. For reasons hereinafter stated, we hold the court erred in denying the motions for acquittal, reverse the judgments of conviction, and remand.

Other issues have been raised by the defendants but since our holding on the foregoing issue is dispositive of these appeals, no consideration of such issues is required to dispose of the appeals.

We will briefly summarize some of the background facts. The United States Coast Guard cutter Diligence, with drug enforcement officers aboard, on July 22, 1975, was patrolling the Mona Passage area, an international waterway. A helicopter assigned to the cutter observed the ship Double Eagle traveling about twenty miles off the coast of Puerto Rico. The helicopter's occupants observed some packages floating in the water some twenty feet behind the Double Eagle which they first thought to be garbage. Upon descending and coming closer to the ship, they observed five small packages wrapped in plastic bags and a box-like package wrapped in burlap about two feet long and one foot wide floating in the water in the vicinity of the Double Eagle. The helicopter landed in the water and retrieved the packages and box. As a result of a field examination, they determined the parcels contained marihuana. The packages were produced and introduced at the trial. A qualified chemist testified that the contents were in fact marihuana.

The helicopter remained in radio contact with the cutter, reporting its findings. Pursuant to directions from the cutter, by writing on a blackboard, it advised the occupants of the Double Eagle to prepare for the landing of a search party. Shortly thereafter, the search party from the cutter arrived and boarded the ship. They encountered no resistance. The search revealed no marihuana on board. The seven occupants of the ship were arrested and taken to the Government cutter and then to Puerto Rico.

There was evidence that there were no other ships or planes in the area. The Government contends that a chart lying open in the steering compartment showed marks which indicated the Double Eagle was headed for Puerto Rico. Such map was seized and offered in evidence.

We will assume for the purpose of the present appeals, without so deciding, that there is adequate evidentiary support for a finding that the marihuana retrieved by the helicopter came from the Double Eagle and that the Double Eagle was headed for Puerto Rico.

The crucial issue presented by these appeals is whether there is evidence to support a jury finding that appellants knowingly and intentionally either acted as principals or aided and abetted principals in attempting to import marihuana into the United States.

Twenty-one U.S.C. § 963 reads:

Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

Twenty-one U.S.C. § 952, subject to certain exceptions not here relevant, provides:

It shall be unlawful . . . to import into the United States from any place outside thereof, any controlled substance in schedule I or II of subchapter I of this chapter, . . .

Marihuana is classified as a Schedule I controlled substance. 21 U.S.C. § 812(c), Schedule I, (c)(10).

■ This circuit and federal courts generally have rejected the rule contended for by the defendants to the effect that where the Government's evidence is circumstantial it must be such as to exclude every hypothesis other than that of guilt. *Dirring v. United States*, 328 F.2d 512, 515 (1st Cir. 1964); *Holland v. United States*, 348 U.S. 121, 139–40, 75 S.Ct. 127, 99 L.Ed. 150 (1954). The proper test to be applied when the evidence is largely circumstantial is "whether the total evidence, including reasonable inferences, when put together is sufficient to warrant a jury to conclude that defendant is guilty beyond a reasonable doubt." *Dirring v. United States, supra* at 515. Such rule is reaffirmed in *United States v. Concepcion Cueto*, 515 F.2d 160, 162 (1st Cir. 1975).

■ The test for determining whether a party is an aider or abetter is stated by the Supreme Court in *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949), as follows:

In order to aid and abet another to commit a crime it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." L. Hand, J., in *United States v. Peoni*, 100 F.2d 401, 402.

■ The *Nye & Nissen* standard just quoted has been applied in many federal cases. In *Snyder v. United States*, 448 F.2d 716, 718–19 (8th Cir. 1971), the court reversed a conviction after quoting from *Nye & Nissen*. The court stated:

By far the most important element is the sharing of the criminal intent of the principal, and this is concededly difficult to prove; nevertheless the Government must prove this sharing of criminal intent. *Johnson v. United States*, supra [195 F.2d 673 (8 Cir. 1952),]; *Mack v. United States*, 326 F.2d 481 (8th Cir.) cert. denied, 377 U.S. 947, 84 S.Ct. 1355, 12 L.Ed.2d 309 (1964).

Mere association between the principal and those accused of aiding and abetting is not sufficient to establish guilt, *Ramirez v. United States*, 363 F.2d 33, 34 (9th Cir. 1966); *United States v. Joiner*, 429 F.2d 489, 493 (5th Cir. 1970); nor is mere presence at the scene and knowledge that a crime was to be committed sufficient to establish aiding and abetting. *Ramirez v. United States*, supra; *United States v. Garguilo*, 310 F.2d 249, 253 (2d Cir. 1962). Mere presence at scene of crime is not evidence of guilt. *Hicks v. United States*, 150 U.S. 442, 447, 448, 14 S.Ct. 144, 37 L.Ed. 1137 (1893).

The evidence of course must be viewed in the light most favorable to the Government as the prevailing party.

■ We shall now apply the facts of this case to the law as above stated. The record contains nine hundred pages of transcript of testimony and court proceedings produced at the trial. An extensive discussion of the voluminous evidence would unduly prolong this opinion and serve little purpose. We have carefully gone over all of the testimony and are convinced there is no substantial evidence to support the conviction of any of the appellants, either as principals or as aiders and abetters.

The appellants here involved were young men, short of funds, seeking travel for educational experience and adventure. Only one had any previous experience as a sailor. All had sought passage on other ships in

exchange for their labor as members of the crews without success. Each was accepted on that basis by the captain of the Double Eagle which was anchored in Colombia, South America during a period ranging from about a month to a week before the departure of the ship on June 28, 1975. Appellants were advised that the ship was headed for Europe to participate in some bicentennial races. None of the appellants had any previous acquaintance with Captain Boord or the other persons on board the ship, except that Scodes and Francomano knew each other and had commenced their journey from Argentina together, visiting and exploring other countries on their way.

The ship stopped at Haiti for supplies and at Santo Domingo for fuel prior to the incident here involved and was uneventfully processed by customs at both places.

The Government offered no evidence to show any possession, ownership or interest in marihuana on the part of the appellants and did not establish that appellants had knowledge of the presence of the marihuana on board the ship. The marihuana containers were relatively small and could have been readily concealed. There is no evidence that any of the appellants were ever in Captain Boord's cabin. Some of the appellants testified that they were told specifically not to enter such cabin.

There is no evidence that any of the appellants used marihuana or that any of them had been engaged in previous drug operations.

The Government contends that because the occupants of the ship consisted of only seven persons, all formed a closely knit organization. While there is no evidence of any animosity between appellants and the other ship occupants, there is no substantial evidence that the appellants had any close relationship with the other occupants. Some of the appellants had difficulty in communicating because of language differences. We can find no basis for a reasonable inference that a person or persons on board other than the appellants, who might be the owner or possessor of the marihuana, would cut in the defendants on a drug transaction. The record shows an urgent desire of all appellants to secure passage on the Double Eagle, and it rather clearly appears that no special inducement was necessary to get them to join the crew.

The record is also barren of any evidence of any participation by any of the appellants in the drug transportation transaction as an aider or abetter. The crucial gap lies in the lack of proof that any of them knew that Double Eagle was being used to import marihuana. If they did not know this, their unwitting assistance by serving as members of her crew fell short of the knowing participation required for aiding and abetting. Doubtless the intimacy of association on a small vessel is a factor which, with others, could rather quickly add up to circumstantial proof of guilty knowledge; but such other factors are simply absent here. Appellants' presence on board Double Eagle was perfectly consistent with ignorance of any drug importation scheme. Even if it could be inferred that appellants acquired knowledge of the throwing of the packages overboard, such last minute knowledge together with all other evidence produced by the Government affords no legal basis for appellants' conviction as aiders and abetters. There is no evidence which would support a sufficient inference that appellants consciously associated themselves with the importation venture or participated in it as something which they sought to bring about or that they sought by their action to make the venture successful.

The appellants each took the stand and denied any knowledge that the marihuana was aboard or that they had observed the packages being thrown overboard. Appellants obviously had no control over the operation of the ship or the contents of its cargo. The Government urges that credibility findings are for the trial court and this is doubtless true. However, the Government made no case in chief and no testimony offered by the appellants strengthens the Government's case.

A jury may, it is true, sometimes infer guilt from the mere fact that the defendant

lied on the stand to cover his guilt, *see United States v. Kilcullen*, 546 F.2d 435, 443 (1st Cir. 1976) cert. denied, —— U.S. ——, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977), but after examining appellants' testimony carefully we can detect no inconsistencies or other appropriate basis for such an inference here.

The conviction of the four defendants-appellants is reversed. This case is remanded to the trial court with direction to sustain the motions for acquittal filed by appellants and to dismiss the indictment as to the appellants.

*Reversed and remanded.*