UNITED STATES of America, Appellee,

v.

Francisco RIVERA RODRIGUEZ, Defendant, Appellant.

No. 86–1057.

United States Court of Appeals, First Circuit.

Submitted Sept. 12, 1986.

Decided Dec. 30, 1986.

Carlos R. Noriega, Hato Rey, P.R., on brief, for defendant, appellant.

Antonio R. Bazan, Asst. U.S. Atty., and Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., on brief, for appellee.

Before BOWNES and TORRUELLA, Circuit Judges, and CARTER,* District Judge.

TORRUELLA, Circuit Judge.

This appeal arises from the conviction of appellant Francisco Rivera Rodriguez in the United States District Court for the District of Puerto Rico for the importation of cocaine and the possession with intent to distribute cocaine. *See* 21 U.S.C. § 952(a), 841(a)(1) and 18 U.S.C. § 2. Appellant challenges his conviction on three grounds. We find that none of these grounds warrants reversal and thus affirm the district court.

## I

Appellant's first claim is that the trial court erred in admitting drug paraphernalia seized during his arrest. The trial court admitted the drug paraphernalia under Rule 404(b) of the Federal Rules of Evidence, which allows admission of evidence of other crimes or wrongful conduct to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

Appellant was arrested at his home and the automobile suspected to have been used during the commission of one of his offenses was seized. The trunk was opened and objects claimed by appellant's wife to belong to her personally were given to her. A large plastic trash bag was removed, and although appellant's wife claimed it, the bag was opened. Inside was a sifter-grinder and a spoon, both with traces of cocaine, and several small glassine envelopes.

■ A trial court may admit evidence under Rule 404(b) if (1) the evidence has some "special" probative value and (2) if this probative value outweighs any possible prejudice. *United States v. Medina*, 761

F.2d 12, 15 (1st Cir.1985). The evidence here has such probative value. The sifter-grinder and spoon were offered to show defendant's knowledge; the traces of cocaine found on the spoon and the sifter-grinder were offered to show the identity of the drug; and the glassine envelopes, to show the absence of mistake or accident (i.e., that appellant was distributing cocaine in these envelopes after he had adulterated it). The balancing decision is left to the discretion of the district court. *Id.* The appellant alleges that the admission of the sifter-grinder had the prejudicial effect of raising the animosity of the jurors against the defendant; however, in light of the clear probative value of the evidence, we do not believe the district court abused its discretion.

■ The appellant further argues that the testimony regarding the uses of the sifter-grinder should not have been permitted. The witness, who had been properly established as an expert, testified that the sifter-grinder is an instrument that can be used to adulterate cocaine. Federal Rule of Evidence 702 permits expert testimony which will assist the trier of fact to understand the evidence. *See* Fed.R.Evid. 702, Advisory Committee Notes. "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Id.* (quoting Ladd, *Expert Testimony*, 5 Vand.L.Rev. 414, 418 (1952)). In the instant case, it is doubtful that the jurors could have determined, without the aid of the expert witness, that the sifter-grinder is an instrument that can be used to adulterate cocaine. We do not consider this information to be within the common knowledge of jurors and thus, an appropriate explanation by an expert is preferable to jury speculation. Once the district court decided to admit the sifter-grinder into evi-

* Of the District of Maine, sitting by designation.

dence, the explanation reasonably and necessarily followed.

## II

Appellant claims, second, that there was insufficient evidence presented at trial. Appellant Rivera was charged with the importation of cocaine and the possession with intent to distribute cocaine in two separate indictments involving both counts. Those indictments were later joined for trial and appellant was convicted by a jury of all counts in both indictments. The first indictment concerned the events of January 7, 1985 and the second indictment concerned those of January 14, 1985. Appellant contests the sufficiency of the evidence in regards to the January 14 indictment.

On appeal, evidence is sufficient if a reasonable person could fairly find the defendant guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government. *U.S. v. Gibson*, 675 F.2d 825, 829 (6th Cir.1982). The standard of review that applies to a refusal to direct a verdict in favor of a defendant is well established. A verdict should be directed only where the evidence could lead reasonable men to but one conclusion. This determination is to be made without evaluating the credibility of the witness or considering the weight of the evidence. *Harrington v. United States*, 504 F.2d 1306, 1311 (1st Cir.1974).

The evidence produced at trial consisted primarily of the testimony of Ms. Magda Castillo. Prior to her arrest, Magda had been employed as a waitress aboard the ship M/V VICTORIA for over a year. She was acquainted casually with another crewmember, Domingo Méndez-López. On January 3, while the ship was docked in Venezuela, Magda encountered Méndez at the Avila Restaurant. He introduced her to his friends and asked her to carry a package back on board. After she did this, Méndez revealed that the package, wrapped in Christmas paper, contained two kilograms of cocaine. He convinced her to help him while his usual cohort, another crewmember, was on vacation. On January 7, the ship arrived in Puerto Rico and Magda brought the package to Don Ricardo's Restaurant, where Méndez was waiting. The appellant arrived and Magda met him for the first time. The three then proceeded in the appellant's brown Volvo to his place of business, where he dropped off the cocaine. They then drove to another spot where appellant unsuccessfully attempted to obtain payment for the cocaine. Magda was subsequently dropped off at the ship, and Méndez and the appellant continued on. That same night, Magda returned to Don Ricardo's Restaurant and again met the appellant. They went out to his car and he gave her a large sum of money which she brought back to the ship and delivered to Méndez. These are the facts of the first completed transaction which comprise the first indictment.

The facts of the second indictment began when the M/V VICTORIA returned to Venezuela. Nuris, the wife of one of Méndez' friends, Johnny, whom Magda had met at the Avila Restaurant the previous week, came to pick up the money and carry it off the ship. Magda had lunch at the Avila Restaurant with Méndez, Johnny and Nuris. Méndez gave Magda another package identical in appearance to the last one, which she again carried on board. Nuris gave Magda a napkin with her name, address and phone number written on it; this name and phone number corresponded to that found in an address and telephone book seized from appellant. The ship proceeded to Puerto Rico and on the morning of the 14th, a crewmember of the M/V VICTORIA disembarked and noticed Méndez and the appellant conversing on the dock leaning on a car which fits the description of appellant's brown Volvo. The crewmember returned a while later and saw Méndez and the appellant still talking. This crewmember made a photo identification of the appellant, as well as an in-court identification. That same morning, about an hour later, Méndez asked Magda when she would bring the package to Don Ricardo's Restaurant. Magda said that she

could not because she had to be on the ship for an inspection. After much argument, she agreed to bring the package to Méndez at a cafeteria located on the dock. While going through customs, the cocaine was detected and Magda admitted that it belonged to Méndez. They were both arrested.

Other testimony against appellant included that of the DEA agent, who stated that as a result of his conversation with Magda after her arrest he began an investigation of the appellant who "was supposed to be the recipient of the two kilos of cocaine that was seized off the boat on January 14 and also the recipient of approximately two kilos of cocaine on January 7, 1985." An address and telephone book seized from Méndez contained the appellant's home and business phone number. Two months later, the appellant was arrested.

■■■■ The Government may prove its case through the use of circumstantial evidence so long as the total evidence, including reasonable inferences, is sufficient to warrant a jury to conclude that the defendant is guilty beyond a reasonable doubt. *United States v. Mehtala*, 578 F.2d 6, 10 (1st Cir.1978). The issue here is whether there is evidence to support a jury finding that appellant was guilty at least as an aider and abettor of Méndez and Magda in the aborted delivery on January 14. To prove aiding and abetting, the government must show that appellant associated himself with the venture, that he participated in it as something that he wished to bring about, and that he sought by his actions to make the venture succeed. *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949).

■■■■ There is direct testimony inculpating the appellant in regards to the January 7 indictment. The same pattern begins all over again, starting with the giving of a large sum of money to Magda to take on board, which the jury could interpret was to be taken to Venezuela to purchase the January 14 load, then the visit to the Avila Restaurant in Venezuela with Nuris and Johnny, the identical packages, proceeding

to Puerto Rico, and then a request to disembark and again bring the package to Don Ricardo's Restaurant. In the light of this uncontroverted evidence, appellant's presence on the dock on the morning of January 14 cannot be seen as a mere coincidence. Appellant was an active participant in an on-going venture. Crucial to affirming his conviction, is the rule that the government need not exclude every reasonable hypothesis of innocence, provided the record as a whole supports a conclusion of guilt beyond a reasonable doubt. *See, e.g., United States v. Smith*, 680 F.2d 255, 259 (1st Cir.1982); *United States v. Gabriner*, 571 F.2d 48, 50 (1st Cir.1978); *Dirring v. United States*, 328 F.2d 512, 515 (1st Cir. 1964).

In *United States v. Smith*, this court stated, "if the evidence can be construed in various reasonable alternatives, the jury is entitled to freely choose from among them." 680 F.2d at 259. *See also United States v. Klein*, 522 F.2d 296, 302 (1st Cir.1975). In *Smith*, the defendant, a crewmember, was arrested on board a vessel which was transferring large quantities of marihuana on to another vessel. The defendant asserted that his mere presence at the scene of the crime, with no evidence that he participated in the venture, was insufficient to support a conviction. This court looked at the length of the voyage, the very large quantity of marihuana, and the necessarily close relationship of the defendant with the cargo and crew, "taken together with the reasonable inferences that can be drawn therefrom," to support the conviction for conspiracy and for aiding and abetting. *Id.* at 260-61. The defendant alleged that he was an innocent hitchhiker; this is obviously a reasonable hypothesis of innocence, but one which the jury chose to disbelieve. Similarly, in the instant case, the jury looked at the total evidence, the mode of operation, and defendant's presence on the dock the day of delivery, and rejected the hypothesis that the defendant's presence was merely coincidental. They instead reasonably inferred that the pattern was repeating itself, and

that if all had gone as planned, the appellant would have been waiting at Don Ricardo's Restaurant to receive the narcotics.

In *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954), the Court stated:

> Circumstantial evidence ... is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more.

The jury in the instant case weighed the probabilities and determined that appellant was an aider and abettor. The jury fit together the pieces of the jigsaw puzzle and identified the subject even though some pieces were lacking. *See Dirring v. United States,* 328 F.2d 512, 515 (1st Cir. 1964).

In *United States v. Paone,* 758 F.2d 774 (1st Cir.1985) this court held that there was sufficient evidence to convict the defendant as an aider and abettor on the basis of his mere presence during two drug deals. On one occasion the defendant was in the back seat of the car and on the other, he was following in the distance. There was no active participation by the defendant and there was certainly a reasonable hypothesis that the defendant was merely present and not a participant. The jury decided that his presence at both drug deals was not coincidental. The evidence in the instant case is even more convincing, with direct testimony against the defendant by a co-participant in regards to a prior deal, the inference of a set pattern, and the defendant's presence at the dock on the morning of the delivery. We hold that there was sufficient evidence to support a jury finding that appellant was guilty at least as an aider and abettor.

### III

Appellant claims, finally, that the court did not afford counsel the opportunity to cross-examine the government agent as to the presence of a second car at defendant's residence at the time he was arrested. The government agent testified, on direct examination, that after arresting the defendant, an address and telephone book was seized from the pocket of his trousers. The agents then searched and seized defendant's car, a Volvo, which fit the description given by the two eye-witnesses. On cross-examination, the agent testified that there was another car, besides the Volvo, parked at defendant's residence, which the agents did not search. The agent had never seen the other car before and had no knowledge as to whether the defendant had been using the other car prior to his arrest. Defense counsel continued questioning the agent regarding the other car until the court advised him not to persist since the agent had never seen the car before. At a bench conference, counsel attempted to explain his rationale for continuing the line of questioning; the judge determined that the questioning had no reasonable basis and ordered counsel to move on.

Appellant now contends that the disallowed questions could have affected the agent's credibility. Appellant was allegedly trying to establish, on cross examination, that the agents not only searched the Volvo, but the other car as well, and it was at that point that defendant's address and telephone book was found, contrary to the agent's testimony. Appellant offered no proof, at the trial level or on appeal, to substantiate his allegations.

The Sixth Amendment right of a criminal defendant "to be confronted with the witnesses against him" includes the right to impeach credibility through cross-examination. *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974). Although the trial judge retains the traditional discretion to limit the scope of cross-examination, this limitation must be done "with the utmost

caution and solicitude for the defendant's Sixth Amendment rights." *United States v. Houghton,* 554 F.2d 1219, 1225 (1st Cir.), *cert. denied,* 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 120 (1977). The question before us then is whether the trial court abused its discretion in limiting the cross-examination. *Id.* The test for abuse of discretion was set forth by this Court in *United States v. Fortes,* 619 F.2d 108, 118 (1st Cir.1980):

> In reviewing the trial judge's exercise of discretion, one factor to be considered is the extent to which the excluded question bears upon character traits that were otherwise sufficiently explored. The court need not permit unending excursions into each and every matter touching upon veracity if a reasonably complete picture has already been developed.

Based upon the record below, and defense counsel's inability, at the bench conference or on appeal, to offer a valid explanation for the purpose of his questions, the trial judge did not abuse his discretion.

The judgment of the district court is *affirmed.*

GENE CARTER, District Judge, dissenting.

I am pleased to concur fully in Parts I and III of the court's opinion in this matter. I cannot, however, concur in Part II of the opinion in which the court discusses the appellant's sufficiency of the evidence argument concerning the January 14, 1985 charge. I conclude that the evidence was indeed insufficient to convict the appellant of the charged offense on January 14, 1985.

As the majority correctly notes, evidence is sufficient if a reasonable person could fairly find the defendant guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government. *United States v. Gibson,* 675 F.2d 825, 829 (6th Cir.1982). When the evidence is predominately circumstantial, the test is " 'whether the total evidence, including reasonable inferences, when put together is sufficient to warrant a jury to conclude that defendant is guilty beyond a reasonable doubt.' " *United States v. Mehtala,* 578 F.2d 6, 10 (1st Cir.1978) (quoting *Dirring v. United States,* 328 F.2d 512, 515 (1st Cir.), *cert. denied,* 377 U.S. 1003, 84 S.Ct. 1939, 12 L.Ed.2d 1052, *reh'g denied,* 379 U.S. 874, 85 S.Ct. 27, 13 L.Ed.2d 83 (1964)).

Although the standard to be applied is facially clear, the actual analysis of the evidence in any particular case ultimately depends upon the reviewing court's determination of what inferences are reasonable, and therefore would support a finding of guilt beyond a reasonable doubt, and what inferences represent mere conjecture or speculation, and therefore would not support a guilty verdict. I do not disagree with the facts as summarized by the majority; my disagreement flows from my analysis of these facts and what I consider to be the reasonable inferences that the jury could have drawn given the offenses charged.

Two separate indictments, representing crimes committed on two separate dates, charged appellant with the substantive offenses of knowingly or intentionally possessing controlled substances with intent to distribute, 21 U.S.C. § 841(a)(1) (1982), and of importing controlled substances, *id.* § 952(a). In addition, both indictments charged appellant as an aider and abettor of those substantive offenses. 18 U.S.C. § 2 (1982). As the government apparently concedes in its brief, it has not proved the elements of either importation or possession with intent to distribute with regard to the appellant and the January 14th incident. Instead, the government relies exclusively on its proof that appellant aided and abetted in respect to the offense on that occasion.

The evidence to support the charge of aiding and abetting is totally circumstantial. The government may, of course, prove its case through the use of circumstantial evidence. If it wishes to do so, however, it must produce sufficient evidence to establish that appellant associated himself with the venture, that he partici-

pated in it as something that he wished to bring about, and that he sought by his actions to make the venture succeed. *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949).

This court has previously held that certain patterns of behavior do not meet the above standard. For instance, " '[m]ere association between the principal and those accused of aiding and abetting is not sufficient to establish guilt; nor is mere presence at the scene and knowledge that a crime was to be committed sufficient to establish aiding and abetting.' " *Mehtala,* 578 F.2d at 10 (quoting *United States v. Francomano,* 554 F.2d 483, 486 (1st Cir. 1977) (citations omitted)). In both of the cited cases, the appellants were present on a ship later found to be carrying small, readily concealable containers of marijuana. Among the factors the court noted in overturning their convictions for aiding and abetting the importation of marijuana were the appellants' lack of any previous acquaintance with the captain and other crew members, *Francomano,* 554 F.2d at 487, their lack of control over the ship or its contents, *id.,* the lack of previous involvement in drug operations, *id.; Mehtala,* 578 F.2d at 10, and the absence of evidence of any affirmative action to further the venture, *Mehtala,* 578 F.2d at 10. Because there was a dearth of evidence outside of appellants' presence on the ship to establish their criminal intent, these two cases may be characterized as straightforward applications of the test set forth in *Nye & Nissen.* Their cases rested solely on their presence with the contraband at the time the ship was seized.

This court has also identified certain patterns of behavior that are sufficient to meet the above standard. In *United States v. Paone,* 758 F.2d 774 (1st Cir. 1985), the court upheld the appellant's conviction for aiding and abetting the crime of possession with intent to distribute cocaine. There, the court found that the "[a]ppellant was present not only one encounter between [the principal] and undercover agents, but at several critical steps of the transaction. In light of appellant's re-

peated presence at important junctures of this drug deal, it was entirely reasonable for the jury to conclude that his appearances were not coincidental...." *Id.* at 776. The court went on to note that that case would have been "strikingly similar to *Francomano* if appellant's only contact with the transaction had been his presence in the back seat of the car when [the principal] handed over the sample cocaine." *Id.* The facts of this case obviously fall somewhere between *Francomano* and *Paone.* The question to be faced is whether the circumstances of appellant's involvement in one drug transaction on January 7th and his appearance on the dock on January 14th with the principal when no drugs were present are enough to support a finding that appellant's presence at the dock was for the purpose of aiding and abetting the importation of drugs. I conclude that they are not.

The government has chosen to rely almost exclusively on the limited knowledge of its central witness, Ms. Castillo. It is clear from her testimony that her knowledge of both crimes extended to only those events in which she had participated. For instance, she never testified to the identity of the intended recipient of the January 14th package. There is no indication in her testimony that Mr. Mendez had ever revealed to her either the scope of his importation operations or any overall pattern of the transactions. Instead, he had told her little more than what she had needed to know to perform the requested tasks. Consequently, her testimony is a series of snapshots of discrete incidents rather than a description of a continuing enterprise. From these discrete snapshots, the jury was asked to infer a pattern of conduct from the January 7th incident. In essence, they were asked to take this inference and to infer from it that the same pattern was repeating itself on January 14th solely because the appellant appeared on the dock on that date and conversed with Mr. Mendez.

In some instances, a pattern of criminality will support a finding of guilt beyond a

reasonable doubt. In these instances, however, the pattern must remain the same from one incident to another. *See United States v. Lewis*, 759 F.2d 1316, 1345–46 (8th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 406, 88 L.Ed.2d 357, —— U.S. ——, 106 S.Ct. 407, 88 L.Ed.2d 357 (1985) (finding insufficient evidence to support charge of possession of cocaine where certain particulars of the incident differed from pattern that governed previous cocaine transactions). The similarity of portions of the pattern is insufficient to support a finding of guilt beyond a reasonable doubt. *See United States v. Holder*, 560 F.2d 953, 958 (8th Cir.1977) (use of unique packaging of the heroin sold in all three incidents would not support inference from circumstantial evidence that defendant was involved in second and third incident despite that defendant was the actual seller in the first incident).

The majority concludes that the pattern established in the January 7th incident began "all over again, starting with the giving of a large sum of money to Magda ... which the jury could interpret was to be taken to Venezuela to purchase the January 14 load." My review of the testimony reveals no basis from which the jury could infer either that the money given to Ms. Castillo was to be used to purchase the January 14th package or that a pattern could be established from the January 7th incident. First, the link between the money and either package was never explicitly established. At no time did Ms. Castillo testify as to the purpose of the payment. It may have been an advance payment for the January 14th package. It may just as logically have been payment for the January 7th package which had just been delivered on the date the payment was received. Any conclusion regarding the purpose of this money rests, in my view, more on speculation than on inference.

Second, and most significantly, the government never adequately established a repetitive pattern. Only three aspects of the January 7th incident were repeated with respect to the January 14th incident: one, the cocaine was wrapped in Christmas paper; two, Mr. Mendez gave the package to Ms. Castillo and asked her to carry it onto the ship; and three, Mr. Mendez asked Ms. Castillo to carry the package off the ship and return it to him. All of the other aspects of each incident are unique: Ms. Castillo carried money only once; Mr. Rivera picked up cocaine only once; appellant and Mr. Mendez met at a restaurant only once; appellant and Mr. Mendez met at the dock only once. In addition, there was no testimony regarding any pattern to Mr. Mendez's activities. The jury did not know whether he sold his goods in advance or arranged the sale after docking. It is not shown whether he sold drugs to more than one person in Puerto Rico. In fact, the only pattern that was apparent was that Mr. Mendez controlled the packages of drugs both before they were brought onto the ship and after they were returned to shore.

The keystone of the government's case against the appellant with regard to January 14th crimes is the inference that might be drawn from the appellant's appearance with Mr. Mendez on the dock that morning. The evidence establishes that these two had a conversation at that time. There is no evidence, however, as to the subject of this conversation; consequently, any conclusion regarding the purpose of this meeting is conjecture. For all that the evidence shows, the meeting of the parties on the dock was as likely a chance meeting as a prearranged one. They could have conversed for any purpose; one can only speculate that the purpose was importation of drugs. The meeting on the dock is sharply at variance with the circumstances of the January 7th transaction, so it cannot reasonably be said that any parallelism shows that what was happening was what happened on the prior occasion. Without some additional pieces to this puzzle, it appears to me that appellant's actual involvement in the January 14th incident must rest on mere speculation.

Appellant in this case may have been the actual or intended purchaser of the cocaine in question. The government has, how-

ever, failed to introduce sufficient evidence to show that appellant sought, by his actions before he appeared on the dock or by being present there, to make the January 14th importation succeed. If the appellant was not present on each occasion when the crimes were committed, the government must produce sufficient evidence to implicate him as a participant in each transaction. *Cf. United States v. Anderson*, 654 F.2d 1264, 1270 (8th Cir.), *cert. denied*, 454 U.S. 1127, 102 S.Ct. 978, 71 L.Ed.2d 115 (1981), 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982) (finding evidence sufficient to support charge of distribution of drugs even though defendant was not present on occasions when drugs were sold to undercover agents where coconspirator testified regarding defendant's participation in each transaction). This, in my view, the government has failed to do. I would reverse appellant's conviction on count two.