**UNITED STATES of America**

v.

**Laurence B. BROADUS.**

**Cr. No. 86–384.**

United States District Court,
District of Columbia.

July 17, 1987.

Appeal Dismissed Sept. 15, 1987.

Theodore A. Shmanda, Asst. U.S. Atty. (Joseph DiGenova, U.S. Atty., Washington, D.C., on brief), for U.S.

Kim Taylor, Public Defender Service, Washington, D.C., for defendant.

CHARLES R. RICHEY, District Judge.

## INTRODUCTION

On November 13, 1986, the Grand Jury delivered a three-count indictment against Laurence B. Broadus. Mr. Broadus, a seven-year employee of the United States Postal Service, was charged with stealing and knowingly converting a blank United States Postal Service Money Order for his own use, attempting to pass and utter a falsely altered Postal Service Money Order, and knowingly receiving and possessing a stolen money order with the intent to convert it to his own use.[1]

After four status conferences and a combined pre-trial and motions hearing, defendant Broadus was brought to trial on February 19, 1987, fully three months after he and his counsel received the Indictment against him. In response to an inquiry by the Court before the trial began, defense counsel stated that he had no objection to the jury instructions submitted by the Government and in fact stated that the Assistant United States Attorney had done "an excellent job" in preparing those instructions. *Trial Transcript* ("Transcript") at 6; *see id.* at 4–6.

At the conclusion of the prosecution's case, defendant, through counsel, moved for a judgment of acquittal pursuant to Fed.R.Crim.P. 29(a). The Assistant United States Attorney opposed that motion and the Court denied the motion. Defense counsel also, *for the first time* in the three-month-old case, argued that the Indictment and the proposed jury instructions (which had been delivered to him in substantially the same form on January 27, 1987) were improper. Specifically, he argued that defendant could not be convicted both of stealing the money order and of receiving and possessing the stolen money order or its cashed proceeds. He cited no authority for his argument, and he could offer none when asked by the Court to do so. *Id.* at 81–84. The Assistant United States Attorney vigorously maintained that defendant's argument was meritless and, relying on the Government's representations, the Court rejected this motion as well. *See id.* at 82–84.

On February 20, 1987, the jury found defendant guilty of Counts Two (attempted passing and uttering) and Three (receipt and possession of the stolen money order) of the Indictment. After the trial, the Court allowed defendant ten days in which to file "any and all" post-verdict motions. *Id.* at 160. Defendant, through counsel,

---

**1.** This description of the charges against defendant Broadus is far clearer than the Indictment itself, which reads:

COUNT ONE: Between on or about June 11 and June 17, 1986, within the District of Columbia, LAURENCE B. BROADUS did embezzle, steal, and knowingly convert to his own use and to the use of another a blank money order form number 3661650142 provided under the authority of the U.S. Postal Service....

COUNT TWO: On or about June 17, 1986, within the District of Columbia, LAURENCE B. BROADUS, with intent to defraud, did attempt to pass and utter to a U.S. Postal Ser-

vice employee, Ernestine T. Poe, as true and genuine, a falsely altered U.S. Postal Money Order, number 3661650142, dated June 11, 1986, in the amount of $481, well knowing that it bore a falsely altered stamp impression depicting the amount in which it was payable....

COUNT THREE: On or about June 17, 1986, within the District of Columbia, LAURENCE B. BROADUS did unlawfully receive and possess a U.S. Postal Money Order Number 3661650142 with the intent to convert it to his own use, well knowing it to have been embezzled, stolen and converted....

filed a timely motion for a new trial on the grounds that Counts One and Three of the Indictment charged the defendant with alternate theories of the same crime, and that the Court erred by instructing the jury that it could convict the defendant under both of the alternate theories. This was a more elaborate version of the motion defendant advanced at trial, and this time it was supported by citation to case law. In response to that motion, the Assistant United States Attorney recanted his earlier statement that defendant's argument was untenable but maintained that any error was not prejudicial, as the jury found defendant guilty of only one of the inconsistent counts.

On March 24, 1987, the Court held a hearing on defendant's motion, and it was at that time clear to the Court that it would require a transcript in order to consider that motion properly. The Court had learned that the Public Defender Service of the District of Columbia ("PDS") was willing to enter an appearance on behalf of the defendant and to order the transcript without cost to the government. Because of PDS's willingness to enter the case, and because the Court was concerned by defense counsel's failure to question the Indictment and the jury instructions until the trial was nearly over, the Court vacated its earlier appointment of counsel and appointed Ms. Kim Taylor of the Public Defender Service to represent defendant in the remaining proceedings in this case. The Court allowed Ms. Taylor time enough to

order and review the trial transcript before taking any other action on defendant's behalf.

■ On May 8, 1987, defendant, through new counsel, filed a "Motion for Judgment of Acquittal and, In the Alternative, Supplement to Motion for New Trial." On May 15, 1987, the government filed a forceful opposition to this motion. On June 5, 1987, the Court heard oral argument from both sides, and the most notable feature of that argument was the government's presentation. First, the government *admitted* that the Indictment charged alternate theories of the same crime and that the jury instructions, which were in the relevant points submitted by the government itself and which the government had vociferously defended, were erroneous. (The government did, however, stand by its earlier claim that the jury's verdict cured the error by convicting defendant of only one of the inconsistent counts.) Second, the government embarked on a blistering attack against both the new motion for a judgment of acquittal and the Court's actions in permitting defendant to obtain new, and presumably more prudent, counsel.[2]

The Court has recounted the history of this case in detail so that the motions before it may be seen in proper perspective. As discussed above, now before the Court are a motion for a judgment of acquittal and a motion for a new trial. The government opposes both. With respect to the motion for a judgment of acquittal, the

**2.** Chief among the Court's purposes in appointing new counsel for defendant was to obtain an independent perspective on whether there was error in this case. The Court was prepared to grant defendant's motion for a new trial if the law so commanded; it was equally prepared to deny that motion if denial was warranted. In light of trial counsel's performance in this case, the Court believed that it had a duty to ensure both that defendant received adequate post-conviction representation and that the Court receive an appraisal, from a party free from the need to defend a shoddy performance, of the arguments that could be put forward on defendant's behalf.

The Court must also note that it now knows that its instructions were erroneous. When the confusing Indictment is broken down into its essentials, Count One charges the defendant

with stealing property and Count Three charges him with receiving the same property that Count One accuses him of taking. Clearly, defendant may not be convicted of both stealing property and receiving the same stolen property, so he could not be convicted under both Counts One and Three. *Milanovich v. United States,* 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961). Unfortunately, that is precisely what the instructions submitted by the government, and given by the Court, allowed. The Court's error is not cured by the fact that the jury found defendant guilty of Count Three but not of Count One. As the Supreme Court has stated in unmistakeable terms, there is "no way of knowing whether a properly instructed jury would have found the [defendant] guilty of larceny or of receiving (*or, conceivably or neither*)." *Id.* at 555, 81 S.Ct. at 730 (emphasis added).

government notes that Fed.R.Crim.P. 29(c) specifies that all post-trial motions for a judgment of acquittal be filed within seven days after the jury verdict, and it vigorously maintains that this Rule is a jurisdictional bar against late motions. The government's papers also suggest that, even if the Court were able to consider a motion for a judgment of acquittal at this time, the record does not support such a judgment. With respect to the motion for a new trial, the government admits that the Indictment and instructions erroneously allowed the jury to convict defendant of stealing and receiving the same stolen property, but the government continues to claim that this manifest error was harmless as the jury found defendant innocent of stealing and guilty of receiving the stolen property.[3]

The Court has carefully considered every argument advanced by each party, and it has undertaken extensive research of its own. The Court is convinced that it has the power to enter a judgment of acquittal and that the government utterly failed to present evidence necessary for a reasonable juror to convict defendant of any of the crimes charged. Accordingly, the Court will enter a judgment of acquittal on defendant's behalf. As such, the Court need not—indeed, cannot—decide whether the motion for a new trial should be granted.

## THE COURT HAS INHERENT AUTHORITY TO ENTER A JUDGMENT OF ACQUITTAL.

Although the government maintains that this court is jurisdictionally barred from entering a judgment of acquittal outside the period specified by Rule 29(c), there is no law on that issue in this circuit.[4] Nor has the Supreme Court spoken directly. But, in a somewhat different context, the Supreme Court has clearly implied that a trial court has the inherent power, if not the duty, to examine the sufficiency of the evidence against a criminal defendant *sua sponte.*

In *United States v. Gaddis,* the Supreme Court stated that a trial court confronted with a motion for a new trial is not concerned with grounds for a new trial alone. Rather, it must weigh the sufficiency of the evidence against a defendant before deciding the defendant's motion for a new trial, and, if the evidence does not support the verdict of guilty, set aside that verdict. 424 U.S. 544, 549, 96 S.Ct. 1023, 1026–27, 47 L.Ed.2d 222 (1976). Only if the evidence supports the verdict, *Gaddis* holds, may a court go on to consider whether the trial was so flawed that a new trial would be required. *Id.*

Thus, *Gaddis* recognizes a Court's responsibility to ensure that the evidence supports the jury's verdict, regardless of whether the defendant has asked the Court to undertake the inquiry. And it strongly supports the idea that a court with jurisdiction over a prosecution must consider whether the evidence presented at trial was sufficient to support a guilty verdict.

*Gaddis*'s implication is now the law of the Third and Ninth Circuits. Those courts

---

**3.** Defendant was also found guilty of attempted passing and uttering (Count Two of the Indictment), but this was not one of the counts to which defendant pointed in his argument that the instructions were erroneous.

**4.** In its brief, the Government claims that cases in this and other circuits support its argument that the time limits set forth in Rule 29 are "absolutely jurisdictional." *See Government's Oppositions to Defendant's Untimely Motions,* at 7–14. Every one of those cases is inapposite to the case at bar. First, the District of Columbia Circuit cases cited by the government do not even imply that Rule 29 imposes a jurisdictional bar against entry of a judgment of acquittal outside the seven-day limit set by Rule 29. All but one refer only to the *standards* that a trial

court must employ when considering a motion for a judgment of acquittal. The other D.C. Circuit case, *United States v. Green,* 414 F.2d 1174 (D.C.Cir.1969), involves not a judgment of acquittal but a court's power to order a new trial *sua sponte*—an order that creates double jeopardy concerns not implicated in the instant case. Indeed, all but two of the many cases cited by the Government relate not to motions for a judgment of acquittal but to motions for a new trial pursuant to Fed.R.Crim.P. 33, and thus are not relevant to the question whether the Court may enter a judgment of acquittal. As will be detailed below, the other two cases also arise in circumstances different from those of this case and thus are not relevant to this Court's decision. *See infra* p. 596 n. 5.

have recently held that a trial court has inherent power to enter a judgment of acquittal and may do so at any time after trial as long as the Court has jurisdiction over the action. In the seminal case of *Arizona v. Manypenny*, 672 F.2d 761, *cert. denied*, 459 U.S. 850, 103 S.Ct. 111, 74 L.Ed.2d 98 (1982), the Ninth Circuit found that "Rule 29(c) creates a deadline by which defendants must present motions for a judgment of acquittal to the court; it does not address the court's inherent power to grant such a judgment." *Id.* at 764. Thus, the Court held that

> a court has power to reconsider a timely motion for a judgment of acquittal premised on insufficiency of the evidence when the court, which still retains jurisdiction of the case, decides, in considering another of the defendant's motions, that its earlier denial of the Rule 29 motion was erroneous.

*Id.* at 765–66.

The Third Circuit has expanded the *Manypenny* rule along the lines suggested by *Gaddis.* It has held that a court has inherent power to enter a judgment of acquittal *sua sponte* if it has jurisdiction over the case and the defendant has failed to move for acquittal. *United States v. Giampa*, 758 F.2d 928, 936 n. 1 (3d Cir. 985). That inherent power permits a Court to enter a judgment of acquittal, the Third Circuit has held, even if the defendant made an untimely motion for a judgment of acquittal while the case was still before the trial court. *United States v. Coleman*, 811 F.2d 804 (3d Cir.1987).[5]

Thus, like *Gaddis*, the Ninth and Third Circuits view the rules of criminal procedure as a procedural code that does not set outer limits on the power of a Court having jurisdiction over a case to do justice and to safeguard the integrity of the criminal process. *See Manypenny*, 672 F.2d at 764–65. Such a view is, as *Manypenny* itself points out, consistent with Fed.R.Crim.P. 57's statement that judges "may regulate their practice in any manner not inconsistent with these rules or those of the district in which they act" when a case is "not provided for by rule." It is also thoroughly consistent with other aspects of the Federal Rules and with other principles that govern a court's power to correct injustice.

Most important, Rule 2 of the Federal Rules of Criminal Procedure sets out the purposes of the criminal rules. Rule 2 mandates that a court ensure "the just determination of every criminal proceeding" if it is to conform to the Federal Rules. Fed.R.Crim.P. 2. Rule 2 demands that a Court attend both to the needs of the individual litigants and to the public at large and approach procedural problems flexibly so that justice, fairness in administration, and efficiency are accommodated. *See, e.g., Fallen v. United States*, 378 U.S. 139, 142, 84 S.Ct. 1689, 1691–92, 12 L.Ed.2d 760 (1964); *Warren v. United States*, 358 F.2d 527, 530 (D.C.Cir.1965); *see also* C.A. Wright, *Federal Practice and Procedure: Criminal* § 32 (1982 and Supp.1986).

Rule 2 is the criminal procedure analogue to Fed.R.Civ.P. 1, see *Advisory Committee Note to Rule 2*, which requires a court confronted with a civil case to place justice ahead of an unyielding fealty to the words of the rules. If the words of the civil rules cannot be used to defeat justice, *Cook v. Boorstin*, 763 F.2d 1462, 1472 (D.C.Cir.1983); *Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 721–22, 85 L.Ed. 1037 (1941), a seemingly plausible inference from a criminal rule cannot command blind adherence if it would deprive an accused

---

**5.** The government ignores these cases in its brief. Moreover, the only case cited in the government's brief that conceivably contradicts this line of cases is *United States v. Johnson*, 487 F.2d 1318 (5th Cir.), *cert. denied*, 419 U.S. 825, 95 S.Ct. 41, 42 L.Ed.2d 48 (1979), which a careless reader may interpret as holding that a Court may not enter a judgment of acquittal after the time period specified in Fed.R.Crim.P. 29(c) has passed. But *Johnson* involved a situation in which the trial court *had no jurisdiction* over the prosecution when it considered the motion for a judgment of acquittal, and thus there was no case or controversy before the Court at that time. That the Fifth Circuit would likely not extend *Johnson* to situations such as the case at bar is suggested by *Ansley v. United States*, a venerable case in which that Circuit noted that a motion to set aside a guilty verdict "can and should be raised by the Court of its own motion, if necessary to prevent a miscarriage of justice." 135 F.2d 207, 208 (1943).

person, for whom the stakes are so very much higher than a civil litigant, of a just determination of his or her cause. Thus, Fed.R.Crim.P. 2 implies that a trial court is *obligated* to ensure that every guilty verdict is supported by at least some evidence on every element of the crime charged.

Rule 2 also requires a Court to use the Rules of Criminal Procedure to promote "fairness in administration and the elimination of unjustifiable expense and delay." These efficiency concerns similarly suggest that Rule 2 requires a trial court to exercise its inherent supervisory authority to review the sufficiency of the evidence that supports a criminal conviction. Otherwise, a defendant in the situation in which this defendant finds himself could not proceed before the trial judge who has already invested time and thought in the case but would have to proceed to appeal or lodge a collateral attack on his conviction.

■ This attack could take a number of forms. For one, defendant could attack the conviction, collaterally or on direct appeal, by challenging the effectiveness of his representation. Defense counsel's failure to move for a timely judgment of acquittal after the trial constitutes ineffective assistance of counsel if that motion would have been successful. *See, e.g., United States v. Watts,* 532 F.Supp. 354 (D.D.C. 1981). In this case, given trial counsel's failure to bring a timely motion for a judgment of acquittal, and the fact that counsel had the Indictment for three months and the proposed jury instructions for three weeks before he raised his eleventh-hour objections, defendant would, in this Court's opinion, at the very least be entitled to question the constitutional adequacy of the representation he received.[6]

Nor is this the only waste of judicial resources implied by the government's po-sition. Even if a court could not directly evaluate the evidence supporting defendant's conviction, defendant could challenge that evidence at any point in the future through a collateral attack on the legitimacy of his conviction or sentence. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under 28 U.S.C. § 2255, defendant could move at any time to vacate, set aside, or correct whatever sentence this Court imposes. *See, e.g., United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974). Thus, if Rule 29(c) prohibited the trial court from weighing the sufficiency of the evidence for itself, its only result would be to encourage subsequent collateral attacks on the legality of criminal convictions.

The Rules of Criminal Procedure cannot elevate form over substance to the point where considerations of efficiency are irrelevant and a trial court is deemed powerless to review a conviction that would fall upon collateral attack. A rule of law such as this, which would so wrongfully waste judicial resources, which would result in a great loss of time and money to a possibly wronged defendant, and which would fail to serve the public's interest in speedy, fair, and resource-efficient criminal justice, would be utterly at odds with the commands of Rule 2. *See, e.g., IV American Bar Association Standards for Criminal Justice* 22–2.1 (1980).

■ In short, the fact that defendant could attack his sentence in another court and obtain a set-aside of his conviction, and could even rely on the very same grounds that would be the basis for a judgment of acquittal, demonstrates the wisdom of the rule adopted by the Third and Ninth Cir-

**6.** An appellate court can raise the matter of ineffective assistance of counsel *sua sponte. See, e.g., United States v. DeCoster,* 487 F.2d 1197 (D.C.Cir.1973). A due regard for judicial economy, as well as considerations of fundamental fairness, suggests that a trial court, which is far better positioned to assess the performance of trial counsel, can also *sua sponte* consider whether trial counsel's performance was so ineffective as to deprive the defendant of his constitutional right to reasonably competent representation. Moreover, as a trial court has inherent power to ensure that other constitutional rights of criminal defendants are protected, *see, e.g., United States v. Whitlock,* 663 F.2d 1094 (D.C.Cir.1980) (power to order competency exams *sua sponte*), a trial court may certainly ensure that the fundamental right to counsel is protected as well.

cuits. Rule 2 commands "fair administration" and "the elimination of unjustifiable expense and delay." Neither fair administration, speed, nor fiscal efficiency would be served by finding that a time limit imposed on criminal defendants by Fed.R. Crim.P. 29(c) prevents trial courts from correcting injustice. Nor would the broader interests of justice be served, as the trial court is best positioned to evaluate both the evidence and the adequacy of trial counsel. Thus, the only outcome consistent with Fed.R.Crim.P. 2 is that a trial court, with jurisdiction over a criminal case, has inherent power to evaluate the sufficiency of the evidence supporting conviction at any time while its jurisdiction over the case continues.[7]

## THIS COURT MAY CONSIDER WHETHER TO ENTER A JUDGMENT OF ACQUITTAL IN THIS CASE.

■ By virtue of defendant's timely filed motion for a new trial, which this Court has not yet decided, this Court continues to have jurisdiction over this case. Fed.R. Crim.P. 33. Thus, the Court is in a position to consider whether the jury's verdict is supported by the evidence adduced by the prosecution at trial.

The Court notes that both the Third Circuit and the Ninth Circuit rationales support its decision. If this Circuit adopted the Third Circuit's rule that a court with jurisdiction over an action may *sua sponte* enter a judgment of acquittal if necessary to do justice, *United States v. Giampa,* 758 F.2d at 936 n. 1, this Court would be well within its powers to consider whether justice required it to enter a judgment of acquittal. And, as the preceding discussion makes clear, this Court believes that the *Giampa* rule in the Third Circuit is consistent with the commands of Rule 2, the implications of the Supreme Court's decision in *United States v. Gaddis,* the law allowing a defendant to challenge the sufficiency of the evidence against him in a collateral attack or on direct appeal, and with the inherent powers of any Article III court.

If this Circuit were to adopt the narrower Ninth Circuit rule, the Court's decision would still be proper. Under *Arizona v. Manypenny,* a court with jurisdiction over an action may reconsider its earlier denial of a judgment of acquittal. 672 F.2d 761. As the Court noted above, at the close of the prosecution's case-in-chief, defendant made, and the Court denied, a motion for a judgment of acquittal. *See infra* p. 1. Under the *Manypenny* rule, then, the Court would be empowered to reconsider its earlier denial of that motion and reexamine the sufficiency of the evidence. Thus, regardless of which theory this Circuit adopts, the Court can consider whether to enter a judgment of acquittal.[8]

7. It must be mentioned that a court's inherent powers to supervise the litigation before it, and to do justice through that supervision, are extremely broad. *See, e.g., Young v. United States ex rel. Vuitton et Fils S.A.,* — U.S. —, 107 S.Ct. 2124, 2130, 95 L.Ed.2d 740 (1987); *In re Peterson,* 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919 (1920). Thus, it is not surprising that those powers historically have extended to equitable corrections of injustices caused by trial. For, as the Supreme Court has clearly stated, "[i]t is one of the equitable powers, inherent in every court of justice so long as it retains control of the subject-matter and of the parties, to correct that which has been wrongfully done by virtue of its process." *Arkadelphia Milling Co. v. St. Louis Southwestern Ry. Co.,* 249 U.S. 134, 145–46, 39 S.Ct. 237, 241–42, 63 L.Ed. 517 (1919); *see also, United States v. Morgan,* 307 U.S. 183, 59 S.Ct. 795, 83 L.Ed. 1211 (1939). Thus, the Court's decision today does not carve out new law but strictly follows these venerable Supreme Court cases.

8. The Court realizes that *United States v. Coleman,* 811 F.2d 804 (3d Cir.1987) offers another rationale for considering a judgment of acquittal in this case. Under *Coleman,* the Court can consider an untimely motion for a judgment of acquittal. Defendant's untimely motion for a judgment of acquittal is now before the Court, and thus the Court could rely on the *Coleman* rationale. Nonetheless, the Court does not find that *Coleman* establishes a separate ground for considering a judgment of acquittal. If the Court can examine a motion filed by a defendant after the Rule 29(c) deadline, it can do so only by virtue of an inherent power to weigh the sufficiency of the evidence regardless of the strictures of Rule 29(c). As such, defendant's motion is not a separate rationale for the Court's decision but is subsumed in the Court's inherent power—inherent duty—to weigh the sufficiency of the evidence.

## THE EVIDENCE ADDUCED BY THE GOVERNMENT IS NOT SUFFICIENT TO SUPPORT DEFENDANT'S CONVICTION.

The Court's task when considering the sufficiency of the evidence to support a jury verdict is clear. It may not weigh witness credibility or the reliability of any piece of evidence, for these tasks are particularly the province of the jury. *See, e.g., United States v. Singleton,* 702 F.2d 1159, 1165–67 (D.C.Cir.1983); *Curley v. United States,* 160 F.2d 229, 232 (D.C.Cir.), *cert. denied,* 331 U.S. 837, 67 S.Ct. 1512, 91 L.Ed. 1850 (1947). Rather, it must take the view of the evidence and the inferences therefrom most favorable to the government, *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 214, 57 L.Ed.2d 1 (1978), and, "if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt," a Court must enter a judgment of acquittal. *Curley v. United States,* 160 F.2d at 233.

Defendant was convicted of attempting to pass and utter a postal money order with intent to defraud, which was Count Two of the Indictment. The elements of that offense, each of which the government had to prove beyond a reasonable doubt to sustain a verdict of guilty, are: (1) that defendant, within the District of Columbia, attempted to pass and utter a falsely altered United States Postal Money Order; (2) that he knew the money order was falsely altered in a material respect at the time of such attempt; and (3) that he did so with the specific intent to defraud. 18 U.S.C. § 500.

Defendant was also convicted of unlawful receipt and possession of a stolen money order. The elements of this offense, each of which the government also had to prove beyond a reasonable doubt, are (1) that the defendant, in the District of Columbia, unlawfully and knowingly received and/or possessed a stolen, converted, or embezzled United States Postal Service money order that was blank in form; and (2) that he received or possessed this money order with the specific intent to convert it to his or another person's own use or gain. *Id.*

The prosecution's evidence does not support guilt under either of these Counts of the Indictment. The government presented three witnesses. Its first witness was Ms. Deborah Simms, a postal window clerk at the Southeast Station of the Washington, D.C. Post Office. Among Ms. Simms' duties was dispensing postal money orders, which are given to her in groups of 100, by punching in both the amount of the money order and the special code that identifies the particular postal station to issue the money order. *Transcript,* at 19–21, 24. Also among Ms. Simms' duties was recording the serial number of each money order issued and the date on which it was issued, as well as keeping a "voucher" for each money order issued. *Id.* at 21.

Ms. Simms testified that she was issued a new package of 100 money orders on June 9, 1986. *Id.* at 26. She also testified that on June 11, 1986, she saw the defendant repairing a postage meter a few feet from her window; Ms. Simms testified that the defendant was repairing that meter both before she left for lunch and after she returned. *Id.* at 27. She stated that no one took her station while she lunched. *Id.* at 35. On June 18, 1987, a full week after the June 11 incident, Ms. Simms discovered that she was missing a particular money order from her stack and did not have a voucher to show that she had issued it. *Id.* at 25, 35. She also testified that she was "90 percent sure" that the money order was in her pack when she left for lunch on July 11. *Id.* at 36. When shown the stolen money order, Ms. Simms testified that the post office "code" typed onto its face was not the code for the Southeast postal station. *Id.* at 24. Finally, Ms. Simms stated that she did not see the defendant take the money order. *Id.* at 37.

The government next called Ms. Ernestine Poe, Acting Supervisor at the Congress Heights Post Office in Southeast Washington, D.C. *Id.* at 41. Ms. Poe testified that, on or about June 17, 1987, a person she recognized as a postal service employee, and whom she later identified as the defendant, presented a postal money order for cashing. *Id.* at 44. She stated

that the money order he presented contained an amount and a serial number showing that it had been issued at a postal station but did not state to whom it was issued and from whom received. *Id.* at 45. Other than that omission, Ms. Poe testified, there was nothing unusual about the money order that defendant presented. *Id.* at 43.

Ms. Poe said that she was at the window when the defendant presented that money order and, not because there was something suspect about the money order but because she was "just playing around," she told defendant that she would not cash it. *Id.* at 43–44. When defendant asked why she would not approve it for cashing, her response was " 'I'm not going to cash it.' " *Id.* at 44. According to Ms. Poe, the defendant started to leave the post office, but turned around to show identification, and then left the building. *Id.* at 46.

Ms. Poe then testified that, approximately fifteen minutes later, "another young man came back in with the same money order and presented it for cashing." *Id.* at 47. This money order, for $481, was made out "To Reginald Gardner" from "Reginald Gardner." *Id.* Ms. Poe testified that she never saw the defendant sign his name or the name Gardner. *Id.* at 53. Ms. Poe stated that she checked a master list of stolen money orders, discovered that the money order presented was not listed as stolen, and approved the money order for cashing. *Id.* at 48.

Finally, the government called Mr. William Dixon, a postal inspector, who investigated the theft of the money order taken from Ms. Simms' stack. *Id.* at 57. He identified that money order as the one presented and cashed by Reginald Gardner. *Id.* He also testified that laboratory tests failed to pick up any fingerprints on the stolen money order, *id.* at 58, and that he knew that Ms. Simms had identified the defendant as the person who repaired the postage machine on June 11, 1986 and that Ms. Poe had identified the defendant as the man who presented the blank money order on June 17, 1986. *Id.* at 60–62.

What is striking about this testimony is what was not said. Put plain, the testimony relevant to Counts Two and Three of the Indictment does *not* establish what should be the central elements of the case against the defendant.

Taken in the light most favorable to the government, the testimony merely shows that the defendant was left alone with a stack of money orders on June 11, and one of those money orders was discovered missing nearly one week later. During that week, the defendant attempted to cash a money order, for an unknown amount, with an unknown serial number, and with its "to" and "from" entries left blank. When told that his money order would not be cashed, the defendant did not take the refusal as the joke that was intended but left the post office. Shortly thereafter, another man presented a money order at that same post office. That money order was for $481, its serial number matched the one later reported stolen, the post office code it carried was not the proper code for the Southeast Station, and it was made out "To Reginald Gardner" and "From Reginald Gardner."

There is no evidence to support any association of the defendant with the stolen money order presented by "Reginald Gardner." Ms. Poe testified that defendant presented a money order, but she did *not* state the amount of that money order. Nor did she note the serial numbers of that money order. On the basis of her testimony, there is *no evidence at all* that the defendant first presented and attempted to cash the money order later allegedly presented and cashed by "Reginald Gardner." Nor is there any evidence that defendant knew the man who presented and cashed the stolen money order, was ever seen with that man, ever signed the stolen money order in a false name, or received any part of the proceeds when the stolen money order was cashed.

■ Thus, the Court must find that the evidence is not sufficient to support conviction of the defendant under Count Two of the Indictment. There is no evidence that defendant attempted to pass and utter a

falsely altered money order. Nor is there evidence from which a specific intent to defraud could be inferred. As such, the government has not offered evidence on the essential elements of Count Two, and a reasonable juror could not have convicted defendant on that Count unless he or she speculated about the existence of facts not presented to the jury. And, as the Court instructed the jury, jurors "are not permitted, as a matter of law, to engage in speculation or guesswork." *Id.* at 17.

█ And there is no evidence to support conviction under Count Three, receiving or possessing a stolen money order. To convict the defendant under that count, the jury would have had to find in the first instance that the money order proferred *by defendant* was stolen. The government did not offer a scintilla of evidence to connect defendant with a stolen money order. Nor did it present any evidence from which a reasonable juror could infer, without having a reasonable doubt, that defendant received or possessed a stolen money order. As such, no reasonable juror could have convicted defendant under Count Three of the Indictment brought against him.

## CONCLUSION

█ By virtue of defendant's timely filed motion for a new trial, the Court has jurisdiction over the post-trial proceedings in this case. Under its inherent powers to ensure the sufficiency of the evidence to support conviction of a criminal defendant, and to do justice as Fed.R.Crim.P. 2 demands, the Court may consider whether the jury's verdict was supported by evidence that, taken in the light most favorable to the government, would lead a reasonable juror to conclude that defendant had beyond a reasonable doubt committed the crimes charged. Looking at the evidence in just that light, the Court finds that a reasonable juror would necessarily have had a serious doubt that defendant had committed the offenses charged under Counts Two and Three of the Indictment. Thus, the Court will enter an Order, of even date herewith, entering a judgment of acquittal for the defendant in this case.

Inasmuch as there is no motion to expunge defendant's arrest record now before the Court, the Court will not consider the possibility of expungement at this time.

## ORDER

In accordance with the Opinion in the above-captioned case, issued of even date herewith, and for the reasons set forth therein, it is this 16th day of July, 1987,

ORDERED that the verdict finding defendant guilty of the offenses described in Counts Two and Three of the Indictment issued against him on November 13, 1986, shall be, and hereby is, vacated; and it is

FURTHER ORDERED that the Clerk of the Court be and hereby is directed to enter a Judgment of Acquittal on Counts Two and Three of the Indictment in the above-captioned case; and it is

FURTHER ORDERED that defendant's motion for a new trial shall be, and hereby is, dismissed as moot.