**UNITED STATES of America, Plaintiff,**

v.

**Kenneth Doyle HUGHES, Defendant.**

**Crim. No. 90–20026–03.**

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Feb. 21, 1991.

Deborah J. Groom, Asst. U.S. Atty., Fort Smith, Ark., for plaintiff.

James Cash Haaser, Barling, Ark., for defendant.

MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

On October 30, 1990, defendant, Kenneth Doyle Hughes, was convicted by a jury of aiding and abetting in the manufacture of amphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Defendant Hughes moved for a judgment of acquittal at the close of the government's case on the basis that the evidence was insufficient to sustain a conviction of the offense. At that time the court stated:

> [I]m going to look at it again, if I need to, at the end of the evidence, but the

court believes that there is a bare jury question made on Count 2. ... there is a bare jury question made on the aiding and abetting claim made in Count 2 so the motion will be denied.

The motion for judgment of acquittal was renewed after the jury delivered its verdict of guilty. In response, the court said:

Let me frankly say in my view the evidence is not strong against Mr. Haaser's client and Mr. Hough's client. What I will do, frankly, is look at this case again, depending on whether it is necessary or not after all the evidence is in. At that time we will either have a transcript or we'll have a tape of the proceedings. If nothing else, I'll look at it again because I think there is; I think there's barely sufficient evidence but I think it's only barely.

The transcript of the proceedings, insofar as relevant to defendant, Hughes, was prepared and completed by November 26, 1990. On January 25, 1991, defendant filed a "Motion for Decision on Defendant's Motion for Judgment of Acquittal Prior to Sentencing and/or in the Alternative Motion for New Trial." In this motion, Hughes asserts that "the Court, in considering the defendant's motion, reserved its ruling until a review of the transcript could be printed and reviewed by the Court." This is not an accurate statement.

During the detention hearing held immediately after the jury was discharged the court, in ruling on the detention issue, again addressed the issue of the sufficiency of the evidence:

In Mr. Hughes case I have already indicated that I have some concern about whether the evidence is sufficient to sustain a jury conviction in this case. The jury, of course, took care of one of those counts but did not believe that he was innocent of the other count. It seems to me that at the very most Mr. Hughes was a minor player in this, at least as far as we know, he is a minor player in this incident. He apparently was there one time. The jury apparently believed he did. He may have helped to clean, store or stack, or whatever he did, some glassware. At least from what I have before me I cannot determine he was involved any more than that. I also have not heard any testimony here tonight that indicates that he is a particularly bad guy. Maybe I just do not know, I do not know Mr. Hughes obviously, but the fact is that I think that it would be very foolish for Mr. Hughes to flee or to pose a danger to anyone else because of his knowledge, of the court's feeling about that evidence. And that does not mean that the court intends to grant a motion if one is filed in his behalf but it certainly means that the court is going to consider it.

As is readily apparent, the court did not reserve its ruling on Hughes' motion for judgment of acquittal. The court clearly denied Hughes' motion made at the close of the government's case: "There is a bare jury question made on the aiding and abetting claim made in count 2 so the motion will be denied." Equally obvious is that the court, rather than "reserving" its ruling after the jury was discharged, *invited* Hughes to make or renew another such motion: "And that does not mean that the court intends to grant a motion *if one is filed in his behalf,* but it certainly means that the court is going to consider it."

Rule 29(c), Fed.R.Crim.P., provides, *inter alia:*

If the jury returns a verdict of guilty ..., a motion for judgment of acquittal may be made or renewed within seven days after the jury is discharged or within such further time as the court may fix during the seven-day period....

■ Thus, the first obstacle confronting Hughes is his failure to make or renew his motion for judgment of acquittal within seven days after the jury was discharged on October 30, 1990. Although the rule allows such a motion to be made or renewed "within such further time as the court may fix during the seven-day period," the record confirms that the court did not, during the seven-day period, fix a "further time" within which Hughes could make or renew the motion. The court certainly did

not intend to do so and the court does not understand Hughes to contend otherwise.

However, even if Hughes were to argue (as noted, he does not) that he understood the court to "fix" a "further time" for the filing of the motion, *i.e.*, after the transcript was prepared (November 26, 1990), this would in no way provide a justification for Hughes' two-month delay until January 25, 1991, to file the motion. Thus, under any possible version of the facts, Hughes' motion under Rule 29(c) was untimely and unjustifiably so, in view of the court's explicit invitation of the motion.

It is not seriously urged that the motion was, in fact, timely. The crucial issue is the effect of the untimeliness on the court's power to enter a judgment of acquittal based upon the asserted insufficiency of the evidence to support the verdict of guilty.

One need not have been a renowned prognosticator in order to foresee the legal position of the government, which obviously is that the seven-day time period set forth in Rule 29(c) is jurisdictional. Hughes' court-appointed attorney, on the other hand, having developed a belated awareness of the plain and unambiguous provisions of Rule 29, understandably argues that the inexcusable lateness of the motion is of no consequence.

A quite recent decision of the First Circuit Court of Appeals bodes ill indeed for Hughes. *See United States v. Lema*, 909 F.2d 561 (1st Cir.1990). For the court, Senior Circuit Judge Coffin wrote:

> Lema argues that, despite the lateness of the motion, the court continued to have jurisdiction to consider a motion out of time or to grant a judgment of acquittal *sua sponte*. This court has never decided whether the time requirements of Rule 29(c), like those of Rule 33, are jurisdictional. *See United States v. Godoy*, 678 F.2d 84, 88 (9th Cir.1982) (jurisdictional), *cert. den. Godoy v. United States*, 464 U.S. 959, 104 S.Ct. 390, 78 L.Ed.2d 334 (1983); *United States v. Johnson*, 487 F.2d 1318, 1321 (5th Cir. 1974) (same), *cert. den., Johnson v. United States*, 419 U.S. 825, 95 S.Ct. 41, 42 L.Ed.2d 48 (1974); *Rowlette v. United States*, 392 F.2d 437, 439 (10th Cir.1968) (same). *But see United States v. Coleman*, 811 F.2d 804, 807 (3rd Cir.1987) (court allowed late motion where extension was timely requested but where court did not grant extension until three weeks later); *United States v. Giampa*, 758 F.2d 928, 936 n. 1 (3rd Cir.1985) (court retains jurisdiction to grant judgment of acquittal *sua sponte* ); *United States (sic) (Arizona) v. Manypenny*, 672 F.2d 761, 765 (9th Cir.1982), *cert. den. Manypenny v. Arizona*, 459 U.S. 850, 103 S.Ct. 111, 74 L.Ed.2d 98 (1982) (court has power to reconsider earlier denial of timely motion when, in course of ruling on different motion, court decides that earlier ruling was erroneous).

*Lema*, 909 F.2d at 568–69.

*Lema*, however, did not squarely resolve the issue definitively:

> We need not decide the issue, however, because we find that the district court implicitly declined to exercise any power it might have to consider the motion out of time when, ... in denying a motion by defendant's attorney to withdraw, the court held the following: 'The motion for new trial was denied. The only matter pending is the sentencing hearing.' Because the motion was not timely filed within the seven days set forth in Rule 29(c), the district court clearly did not err in declining to consider the defendant's motion for judgment of acquittal.

*Lema*, 909 F.2d at 569.

Thus, *Lema* indicates merely that a court *need not* consider an untimely motion for judgment of acquittal, but does not hold that a court *cannot* do so. However, as the court in *Lema* noted, the Ninth, Fifth, and Tenth Circuits have, at one time or another, held the Rule 29(c) time limits to be jurisdictional.

Yet another rule casts doubt on the court's power to hear and decide a late motion under Rule 29. Rule 45(b) provides, in pertinent part:

> (b) Enlargement

> ... the court may not extend the time for taking any action under Rules 29, 33,

34 and 35, except to the extent and under the conditions stated in them.

Therefore, the court is precluded from authorizing or excusing a defendant's deviation from the time constraints of Rule 29(c), even for excusable neglect. If the discussion were to end here, the defendant would be presented with a seemingly insuperable bar to relief on his motion. However, there is another line of authority from which Hughes' position may garner support.

One of the seminal cases referred to in *Lema* holding that the time limit of Rule 29(c) is not jurisdictional is *Arizona v. Manypenny, Id.* In *Manypenny* the trial judge originally denied Manypenny's timely motion under Rule 29, but later concluded that he had "committed fundamental error" in not either granting defendant's motion for a directed verdict of acquittal or placing the issue of immunity before the jury. At that time there was a motion for new trial under Rule 33 pending which was joined with an alternative motion for arrest of judgment under Rule 34. The trial judge construed the Rule 34 motion as a Rule 29(c) motion and granted Manypenny a judgment of acquittal. The state appealed.

On appeal, the Ninth Circuit affirmed, holding that:

Rule 29(c) creates a deadline by which defendants must present motions for judgment of acquittal to the court; it does not address the court's inherent power to grant such a judgment. We do not read the mention in Rule 29(a) of a court granting such a judgment 'on its own motion' before submission to a jury as an elimination of a court's inherent power to grant such a judgment after submission to a jury.

*Manypenny,* 672 F.2d at 764.

Judge Kennedy drew support for this conclusion from Rule 57(b) and by analogy from an earlier Ninth Circuit case;

We held in *Richter v. United States (sic) (United States v. Richter),* 488 F.2d 170 (9th Cir.1973) that the district court has inherent power to order discovery of the names of witnesses in some circumstances. As we said in that case:

... The Federal Rules of Criminal Procedure are intended to constitute a comprehensive procedural code for criminal cases in the federal courts. But even the rules themselves do not purport to set outer limits on the power of the court. On the contrary, Fed. R.Crim.P. 57(b) states: 'if no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute.'

*Manypenny,* 672 F.2d at 765.

Judge Kennedy examined various cases evidencing the power of the court to correct the legal process or avert its misfunction although not expressly sanctioned by rule or statute. *See e.g., Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764–67, 100 S.Ct. 2455, 2463–64, 65 L.Ed.2d 488 (1980) (assessing costs against parties or attorneys); *Cooke v. United States,* 267 U.S. 517, 534, 45 S.Ct. 390, 394, 69 L.Ed. 767 (1925) (contempt power); *United States v. Armstrong,* 621 F.2d 951, 954–55 (9th Cir.1980) (allowing inspection of property belonging to third parties); *Franquez v. United States,* 604 F.2d 1239 (9th Cir. 1979) (ordering jury trial on an issue when not contemplated by statute); *In re Sealed Affidavit(s) to Search Warrants (Agosto),* 600 F.2d 1256 (9th Cir.1979) (sealing papers filed with the court); *United States v. Simmons,* 536 F.2d 827, 832–34 (9th Cir.), *cert. denied,* 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 130 (1976) (dismissal for want of prosecution); *United States v. Malcolm,* 475 F.2d 420 (9th Cir.1973) (ordering a defendant to undergo a psychiatric exam).

Judge Kennedy concluded that:

[A] federal district court, which has properly retained jurisdiction of a case, has the power to grant a verdict of acquittal, before or after submission of the question of a defendant's guilt to the jury, if necessary to correct a manifest error. There are limits on this authority, *cf. United States v. Smith,* 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947), *(reh. den.,* 332 U.S. 784, 68 S.Ct. 28, 92 L.Ed.

368 (1947)) and its exercise is reviewable in the Court of Appeals.

*Manypenny*, 672 F.2d at 765.

The *Smith* case, to which Judge Kennedy referred, held that a trial court had no power to grant a new trial under Rule 33 after its earlier judgment of conviction had been affirmed on appeal. The actual wording of the *Smith* decision would seem to cast doubt upon the *ratio decidendi* of *Manypenny*, *i.e.* that Rule 29 limits only the time in which defendants must present motions and does not address the court's inherent power to enter a judgment of acquittal. The Supreme Court, in *Smith*, stated:

> [I]t would be a strange rule which deprived a judge of power to do what was asked when request was made by the person most concerned, and yet allowed him to act without petition.... We think that the expiration of the time within which relief can openly be asked of the judge, terminates the time within which it can properly be granted on the court's own initiative.

*Smith*, 331 U.S. at 474–75, 67 S.Ct. at 1333.

One can easily comprehend that if the broad language of *Smith* pertaining to Rule 33 is equally applicable to Rule 29, then the court cannot hear the motion of defendant, Hughes, or decide the issue *sua sponte*. However, Judge Kennedy avoided this pitfall by distinguishing *Smith* from *Manypenny*:

> *Smith* is ... distinguishable as concerning Rule 33 rather than Rule 29, and, more important, as a case in which the trial court retained no jurisdiction over the case at the time of its action (indeed, the appellate court had already affirmed the conviction). The quoted language of *Smith* cannot be applied indiscriminately outside of the particular factual context at issue there (citing cases).

*Manypenny*, 672 F.2d at 765, n. 10.

The first distinction drawn by Judge Kennedy is subject to attack as a frail reed upon which to support the conclusion that *Smith* is not controlling here. In order for one to assert that *Smith* is irrelevant because it dealt with Rule 33 rather than Rule 29, one must assume that a court's power to correct a manifest error by entering a judgment of acquittal under Rule 29 is somehow greater in degree and qualitatively different from a court's power to correct a manifest error by granting a new trial which would appear to be a less drastic judicial action. At first blush, this would not appear to be supported by logic. However, as will be seen, there are facially plausible reasons to distinguish motions for new trials from motions for judgment of acquittal. *See* discussion, *infra*.

The second distinction noted by Judge Kennedy supports the validity of the distinction. The trial court in *Smith* had not a shred of jurisdiction at the time the new trial order was entered, whereas in *Manypenny* the trial court entered the judgment of acquittal prior to sentencing and appeal.

Although the Supreme Court in *Smith* did not base its holding on the fact that the defendant had been convicted and sentenced and that the conviction was affirmed on appeal prior to the entry of the new trial order, this factual difference is sufficient for one to conclude that *Smith* is not controlling here, however, it is far from clear what the Supreme Court would presently hold on these facts.

*Manypenny* is not the last word on the issue. The Third Circuit endorsed the *Manypenny* rule, first in a footnote in the case of *United States v. Giampa*, 758 F.2d 928 (3rd Cir.1985):

> The government contends that the district court lacked jurisdiction to enter a judgment of acquittal because it entered the order more than seven days after discharge of the jury. Fed.R.Crim.P. 29(c). Rule 29(c), however, 'creates a deadline by which defendants must present motions for acquittal to the court; it does not address the court's inherent power to grant such a judgment.' (quoting *Manypenny*, 672 F.2d at 764.)

*Giampa*, 758 F.2d at 936, n. 1.

More recently, the Third Circuit reaffirmed that although the time limit for filing motions under Rule 33 is jurisdiction-

al, "the same result does not necessarily obtain for a motion of acquittal under Rule 29." *United States v. Coleman*, 811 F.2d 804, 807 (3rd Cir.1987). *See also United States v. Wright–Barker*, 784 F.2d 161 (3rd Cir.1986) (reiterating *Giampa's* holding but refusing to define limits of this power). In *Coleman*, the court said further:

> This inherent power to enter a judgment of acquittal does not extend to judgments granting a new trial because such judgment, entered *sua sponte* by the court, might place the defendant twice in jeopardy. Even though the government may appeal an acquittal in some instances, the defendant will never face a new trial after such an appeal.

*Coleman*, 811 F.2d at 807. This may explain why a court may not enter an order for new trial *sua sponte* under Rule 33, but might enter a judgment of acquittal *sua sponte* under Rule 29, as suggested by Judge Kennedy in *Manypenny*.

The *Coleman* rationale does explain why a court may not enter a new trial order *sua sponte*. It does not explain why the time limits set forth in Rule 33 are jurisdictional. An untimely *defense* motion under Rule 33 does not implicate double jeopardy concerns. It must, therefore, be assumed that an untimely Rule 33 motion is a nullity and that the granting of an untimely Rule 33 motion is, in legal contemplation, a *sua sponte* order creating double jeopardy problems notwithstanding that it was requested by a defendant. It would appear to be somewhat unlikely that a criminal defendant would be inclined or allowed to raise the double jeopardy issue after prevailing on an untimely Rule 33 motion. However, in order for the interplay of the double jeopardy clause to constitute a true distinction between a court's powers under Rule 33 and Rule 29, we must assume that an untimely Rule 33 motion is a nullity, that the granting of an untimely motion under Rule 33 is legally a *sua sponte* order, and that a criminal defendant making such an untimely request could appeal the erroneous granting of his own motion on the basis that the new trial order requested violates the defendant's right not to be placed twice in jeopardy. If we accept such assumptions, the distinction is valid. In any event, there are additional reasons why the entry of judgment of acquittal after an untimely motion should be permitted.

The *Coleman* case cited above made clear that the court's power to enter a judgment of acquittal is not limited to those entered *sua sponte*, it also extends "to those occasions when a motion is made and granted." *Coleman, id.* An excellent discussion of the issue is contained in *United States v. Broadus*, 664 F.Supp. 592 (D.D.C.1987). The court in *Broadus* added two justifications for the *Manypenny/Coleman* rule. First, the court turned to a 1976 decision of the Supreme Court, *United States v. Gaddis*, 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976). In *Gaddis* the Supreme Court stated that a trial court confronted with a motion for new trial is not concerned with grounds for a new trial alone. Rather, the court must first weigh the sufficiency of the evidence before deciding the new trial motion, and if the evidence does not support the verdict of guilty, set aside the verdict. *See Gaddis*, 424 U.S. at 549, 96 S.Ct. at 1026. Only if the evidence supports the verdict may a court go on to consider whether the trial was so flawed as to justify a new trial. According to *Broadus*,

> [*G*]*addis* recognizes a court's responsibility to ensure that the evidence supports the jury's verdict, regardless of whether the defendant has asked the court to undertake the inquiry. And it strongly supports the idea that a court with jurisdiction over a prosecution must consider whether the evidence presented at trial was sufficient to support a guilty verdict.

*Broadus*, 664 F.Supp. at 595.

The second additional justification urged by the court in *Broadus* as supporting the court's inherent power to enter a judgment of acquittal stems from a peculiar but logical interplay of Rule 2 with the doctrine of collateral attack. Rule 2 mandates that a court ensure "the just determination of every criminal proceeding." Thus, the court in *Broadus* reasoned that if Rule 2 is to

have any meaning, it requires that a court use the Rules of Criminal Procedure to promote "fairness in administration and the elimination of unjustifiable expense and delay." This, said the court,

> [S]uggests that Rule 2 requires a trial court to exercise its inherent supervisory authority to review the sufficiency of the evidence that supports a criminal conviction. Otherwise, a defendant in the situation in which this defendant finds himself could not proceed before the trial judge who has already invested time and thought in the case but would have to proceed to appeal or lodge a collateral attack on his conviction.

*Broadus*, 664 F.Supp. at 597.

Such an attack could take a variety of forms. A defendant could challenge the conviction by raising the issue of the competency of his trial counsel. Trial counsel's total failure to make a timely motion for acquittal, thereby waiving the issue of the sufficiency of the evidence, constitutes ineffective counsel if the motion would have been successful. That is especially true where, as here, the court advised counsel that it had serious doubt that the evidence was sufficient to convict defendant, and invited a rule 29 motion. Surely counsel is just as ineffective if he makes such a motion late, if the untimeliness precludes consideration or review of the sufficiency of the evidence.

■ In the instant case, Hughes' attorney made a timely motion which was denied. It is the government's position that the untimeliness of Hughes' *post*-trial motion precludes review of the sufficiency of the evidence at this stage by this court. If that is true and if this court is, therefore, powerless to reconsider the earlier denial, then Hughes may either raise the issue of the sufficiency of the evidence on appeal (assuming the point is preserved) or may raise it in a collateral attack (if due to ineffective counsel, the point was not preserved). Either way, the question of the merits of such a motion and the issue of the sufficiency *vel. non* of the evidence will be addressed by some court at some point. If the motion has merit, *i.e.*, if the evidence

was truly insufficient, then the innocent man will someday be set free. How, then, would justice be served by prohibiting the trial court from reconsidering its denial of the motion for acquittal? How would such a procedure promote "fairness in administration" or eliminate "unjustifiable expense and delay"? To say that it is not "unfair" for an hypothetically innocent man to go to prison temporarily while he processes his ultimately successful appeal or attack upon his conviction is to beg the question and epitomize the exaltation of form over substance. In the words of Mr. Bumble in Charles Dickens' *Oliver Twist*, "If the law supposes that, the law is a ass, a idiot." Surely that is not "the law" so the court will now undertake a review of the record to determine whether there is evidence from which a reasonable mind might fairly conclude guilt beyond a reasonable doubt in Hughes' case.

Alford Hart testified that on December 20 or 21 of 1988 he returned to the residence of co-defendants, Richard and Vicki Haren, in Waldron. At that time, defendant, Hughes, was present at the residence (Vol. 1, Tr. 25).

Hart said he saw Hughes only "a couple of times". He was told that Hughes was "Richard's ex-brother-in-law or something." (Vol. 1, Tr. 26). Hart, Richard Haren and Hughes then went to a farmhouse ten or twelve miles away. When they arrived, amphetamine was being "cooked" in the farmhouse. Hart stated that Hughes remained in the house while Hart and Richard Haren went outside to separate some chemicals. When asked what Hughes' involvement was, Hart said he "guessed" that Hughes was helping to make the drugs or was "trying to learn how or something", (Vol. 1, Tr. 28), but was in fact unaware of Hughes' whereabouts on the property or what Hughes was doing (Vol. 1, Tr. 29). After some "oil" was made at the farm house, Richard Haren, Hart and Hughes cleaned the glassware and stored it in a barn. Richard had the amphetamine oil with him. They all then returned to the farmhouse where Richard, Hughes, and

Hart changed the oil into powder (Vol. 1, Tr. 31).

Co-defendant, Linda Alaniz, testified that when she went to the Harens' residence in Waldron, the persons present were "usually Richard and Vicki (Haren); sometimes Doyle (Hughes)." (Vol. 2, Tr. 122). The purpose of these trips was to pick up amphetamine and pay for the drugs. She knew that Hughes was "some sort of relative." She stated she heard Hughes discuss making amphetamine (Vol. 2, Tr. 125). However, on cross-examination she testified that although she had heard Hughes talking about making drugs, this was at some other time and place and she never saw Hughes making drugs. In fact, Hughes' purpose in being at the property at that time was to install an air conditioning system for the Harens (Vol. 2, Tr. 148).

This is the entire testimony referring to Hughes. The question is whether this evidence supports Hughes' conviction for aiding and abetting in the manufacture of amphetamine. In making this determination, the court must view the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences which may logically be drawn therefrom. *See Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Marin–Cifuentes*, 866 F.2d 988 (8th Cir.1989), *cert. den.*, —— U.S. ——, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989). The evidence need not exclude every reasonable hypothesis of innocence but simply be sufficient to convince the jury beyond a reasonable doubt that Hughes aided and abetted in the manufacture. *Marin–Cifuentes, supra; United States v. Wells*, 721 F.2d 1160 (8th Cir. 1983). This court may set aside the verdict only if the evidence is such that a "reasonable-minded jury must have entertained a reasonable doubt as to the proof of at least one of the essential elements of the offense." *United States v. Noibi*, 780 F.2d 1419 (8th Cir.1986).

In this case, this means that there must have been, as a matter of law, a reasonable doubt as to at least one of the following propositions:

(1) That Hughes knowingly or intentionally manufactured amphetamine; or

(2) That Hughes knew that amphetamine was being manufactured or was going to be manufactured *and* knowingly acted in some way for the purpose of causing, encouraging or aiding in the manufacture of amphetamine.

*See*, 18 U.S.C. § 2, 21 U.S.C. § 841(a); *Model Criminal Jury Instructions for the District Courts of the Eighth Circuit*, § 5.01.

The evidence is sufficient to sustain Hughes' conviction. Alford Hart's testimony indicates that Richard Haren, Hart, and Hughes took the amphetamine oil and changed it into amphetamine powder (Vol. 1, Tr. 31). Whether Hughes knew what he was doing was an issue properly submitted to the jury.

■ Given the scant and extremely limited evidence connecting Hughes with the manufacture of amphetamine and Hart's highly questionable credibility, the court would at least be open to the issue of whether Hughes is entitled to a new trial. Unfortunately, the court cannot consider this because Hughes' motion for judgment of acquittal was untimely. Although Rule 29(d) provides a vehicle by which the court shall "also determine whether any motion for a new trial should be granted", that rule only applies if the motion for judgment of acquittal is granted, and further the judgment of acquittal must be granted under Rule 29 rather than under the court's inherent power. Further, the court is powerless to construe Hughes' motion as one for a new trial because, as the court's discussion makes clear, a motion for new trial *must* "be made within seven days after verdict ... or within such further time as the court may fix during the seven-day period." Rule 33, Fed.R.Crim.P. The time limits are jurisdictional. *See United States v. Beran*, 546 F.2d 1316 (8th Cir. 1976); *cert. den.*, 430 U.S. 916, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977). Thus, an untimely motion for new trial is a nullity and the court cannot, therefore, regard an untimely post-trial motion of any kind as a request for a new trial. Finally, as noted,

double jeopardy concerns prohibit the court from ordering a new trial *sua sponte*. Accordingly, Hughes' motion will be denied and Hughes will be sentenced on the verdict.